**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE: FEB 0 2 2017

for CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on Feb 2, 2017

SUSAN L. CARLSON
SUPREME COURT CLERK

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 92021-4 |
| | ) | |
| v. | ) | |
| | ) | EN BANC |
| ANTHONY TYRONE CLARK, | ) | |
| | ) | |
| Petitioner. | ) | Filed: FEB 0 2 2017 |
| | ) | |

YU, J.— At his trial for premeditated first degree murder, petitioner Anthony Tyrone Clark sought to introduce expert testimony regarding his intellectual deficits. Clark asserted this testimony would be relevant to contesting the State's mens rea evidence and to helping the jury understand Clark's affect while testifying. The trial court excluded Clark's proffered expert testimony, but it did allow relevant observation testimony about Clark's education history, Social Security disability benefits, affect, and actions on the day of the murder.

We hold that the trial court properly exercised its discretion in making its evidentiary rulings. The court did allow relevant observation testimony from lay

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Clark*, No. 92021-4

witnesses to rebut the State's mens rea evidence, and Clark does not challenge the scope of this testimony on review. However, because Clark purposefully did not assert or plead diminished capacity and the proposed expert testimony was not relevant to any other purpose, the expert testimony was properly excluded. Clark also cannot establish ineffective assistance of counsel or cumulative error, so we affirm his convictions.

## FACTUAL BACKGROUND

Clark killed the victim, D.D.,[1] with a single gunshot to the back of his head. D.D.'s body was found in a garbage can behind the triplex apartment building where Clark lived. There were no eyewitnesses to the shooting other than Clark himself. Clark testified that D.D. was trying to get Clark's mother's necklace from a high shelf in a closet. Before reaching for the necklace, D.D. removed a gun from his coat pocket, removed the "clip" from the gun, and handed the gun to Clark. 13 Verbatim Report of Proceedings (VRP) (Apr. 15, 2013) at 1594. Clark was sitting on the floor "messing around with the gun," aimed it "towards the ceiling of the closet," and shot D.D. *Id.* at 1595. Several other witnesses testified about Clark's actions on the day of the shooting, including Clark asking his neighbors to help sell D.D.'s cocaine and get rid of D.D.'s body. The State theorized that Clark killed D.D. with premeditation in order to steal D.D.'s gun and

---

[1] We use the victim's initials because he was a minor at the time of his death.

2

cocaine. Clark contended the shooting was an accident. The primary disputed issue was thus Clark's level of intent.

PROCEDURAL HISTORY

By amended information, the State charged Clark with premeditated first degree murder, first degree felony murder, first degree robbery, unlawful possession of a controlled substance with intent to deliver, and second degree unlawful possession of a firearm. Clark pleaded not guilty on all counts.

Before trial, the defense moved to suppress statements Clark made to police after the shooting, contending that he did not validly waive his *Miranda*[2] rights before speaking to police. To support its motion, the defense offered an expert evaluation by Dr. Brent Oneal.[3] At the suppression hearing, Dr. Oneal testified that Clark scored in the bottom first to third percentile in standardized intelligence tests. The court found that Dr. Oneal was a credible witness but denied Clark's motion to suppress.

The State then moved to exclude testimony about Clark's "intellectual deficits" for trial purposes. Clerk's Papers (CP) at 213 (underlining omitted). Clark argued that Dr. Oneal's testimony was admissible for three purposes: (1) to

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).
[3] The record contains inconsistent spellings of this expert's last name. *See, e.g.*, Clerk's Papers at 25 ("O'Neal"), 56 ("Oneal"). We use the spelling "Oneal" for consistency with the Court of Appeals opinion. *State v. Clark*, No. 45103-4-II, slip op. at 3 (Wash. Ct. App. June 23, 2015) (unpublished), http://www.courts.wa.gov/opinions/.

3

help the jury understand Clark's affect during testimony, (2) to explain why Clark does not work, and (3) to contest the State's mens rea evidence. The court granted the State's motion in part and excluded Dr. Oneal's testimony because, in light of the fact that Clark specifically disavowed any intention to argue diminished capacity, expert testimony on Clark's intellectual deficits would be irrelevant and confusing to the jury. It did, however, allow for relevant observation testimony bearing on Clark's intellectual deficits, including his participation in special education, his receipt of Social Security disability benefits, and "that people [who] knew him considered him slow or tended to discount his testimony." VRP (Dec. 17, 2012) at 20. The court also left open the possibility for additional evidence regarding Clark's circumstances and abilities if the State "unfairly sanitized" those facts at trial. VRP (Feb. 15, 2013) at 20.

At the beginning of jury selection, outside the presence of the jury panel, the court noted that some jurors might be confused about whether the death penalty was being sought, given that Clark was charged with murder. The court invited counsel to handle that issue as it felt was appropriate. During individual questioning, the State informed one prospective juror, who was not ultimately seated in this case, that it was not seeking the death penalty. 2 VRP (Mar. 11, 2013) at 120; 5 VRP (Mar. 13, 2013) at 490. It twice repeated that information in

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

front of all the prospective jurors. 5 VRP (Mar. 13, 2013) at 372, 419. The defense did not object at any time.

The defense renewed its request to admit Dr. Oneal's testimony several times throughout the course of the trial, arguing that the testimony was necessary to rebut the State's mens rea evidence and to explain Clark's affect when he testified. Nevertheless, the defense consistently maintained that it was not asserting diminished capacity. The court adhered to its ruling excluding Dr. Oneal's testimony and reminded counsel that relevant observation testimony by lay witnesses was admissible.

The defense elicited testimony that Clark had been in special education, had an individualized education plan, and received Social Security disability benefits.[4] It relied on this evidence in its closing argument, emphasizing that Clark was "not your average 20 year old" and arguing that in light of Clark's actual intellectual abilities, the State had not proved mens rea on the murder change. 15 VRP (Apr. 17, 2013) at 1826.

The jury was instructed on premeditated first degree murder and the lesser-included offenses of intentional second degree murder, reckless first degree

---

[4] The defense did not elicit testimony that one of Clark's neighbors perceived him as slow, believing that was outside the scope of the court's written ruling. Whether the written ruling was unduly restrictive and whether trial counsel was ineffective for failing to elicit testimony about Clark's perceived slowness are not raised as issues on appeal.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

manslaughter, and negligent second degree manslaughter. Clark was convicted of premeditated first degree murder as charged, as well as all the other charged counts, so no verdict was returned on the lesser-included offenses.

The court denied Clark's request for an exceptional sentence downward and imposed sentences at the bottom of the standard range.[5] The Court of Appeals affirmed in all relevant aspects. *State v. Clark*, No. 45103-4-II (Wash. Ct. App. June 23, 2015) (unpublished), http://www.courts.wa.gov/opinions/.[6] We granted Clark's petition for review. *State v. Clark*, 184 Wn.2d 1019, 361 P.3d 746 (2015).

## ISSUES

A.    Did the trial court properly exclude expert testimony regarding Clark's intellectual deficits?

B.    Was trial counsel ineffective for failing to object when the State informed prospective jurors that it was not seeking the death penalty?

C.    Did cumulative error deprive Clark of his right to a fair trial?

---

[5] The court did not impose a sentence for the first degree felony murder conviction due to double jeopardy concerns. VRP (May 28, 2013) at 7.

[6] The State did concede on appeal that the trial court erred in instructing the jury on an uncharged alternative means for first degree robbery. *Clark*, No. 45103-4-II, slip op. at 14-16. The Court of Appeals accepted the concession and reversed the robbery conviction because the error was not harmless. *Id.* at 16. That issue is not presented for our review and does not affect our analysis.

STANDARD OF REVIEW

We review the trial court's evidentiary rulings for abuse of discretion and defer to those rulings unless "'no reasonable person would take the view adopted by the trial court.'" *State v. Atsbeha*, 142 Wn.2d 904, 914, 16 P.3d 626 (2001) (internal quotation marks omitted) (quoting *State v. Ellis*, 136 Wn.2d 498, 504, 963 P.2d 843 (1998)). If the court excluded relevant defense evidence, we determine as a matter of law whether the exclusion violated the constitutional right to present a defense. *State v. Jones*, 168 Wn.2d 713, 719, 230 P.3d 576 (2010).

To prevail on a claim of ineffective assistance of counsel, a defendant must show that trial counsel's performance was "deficient," and that, "but for counsel's deficient performance, there is a 'reasonable probability' that the outcome would have been different." *State v. Hicks*, 163 Wn.2d 477, 486, 181 P.3d 831 (2008) (quoting *State v. Cienfuegos*, 144 Wn.2d 222, 227, 25 P.3d 1011 (2001)). For relief based on the cumulative error doctrine, the defendant must show that while multiple trial errors, "standing alone, might not be of sufficient gravity to constitute grounds for a new trial, the combined effect of the accumulation of errors most certainly requires a new trial." *State v. Coe*, 101 Wn.2d 772, 789, 684 P.2d 668 (1984). Both ineffective assistance of counsel and cumulative error present constitutional issues, which we review de novo. *State v. Samalia*, 186 Wn.2d 262, 269, 375 P.3d 1082 (2016).

7

ANALYSIS

Clark argues the trial court erred in excluding Dr. Oneal's expert testimony because it was relevant to his defense, even though he never asserted or pleaded diminished capacity. It is true that observation testimony regarding relevant facts is generally admissible and does not implicate the pleading requirements for diminished capacity, even if offered to rebut the State's mens rea evidence. However, expert opinion testimony that a defendant has a mental disorder that impaired the defendant's ability to form the requisite mens rea is relevant only to diminished capacity. Diminished capacity must be affirmatively pleaded before trial, and in this case, Clark specifically disavowed any intent to plead diminished capacity. The court thus properly allowed relevant observation testimony tending to rebut the State's mens rea evidence and properly excluded expert testimony that was not relevant absent a diminished capacity defense. To the extent, if any, that the court unduly restricted the scope of allowable observation testimony by lay witnesses, Clark does not raise that issue on review. He does not otherwise show reversible error, and we therefore affirm.

A. The court properly excluded Dr. Oneal's testimony

Expert testimony is admissible "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." ER 702. The defense contends that Dr. Oneal's expert testimony

8

would have assisted the jury to determine a fact in issue—Clark's level of intent—and would also have helped the jury to understand the evidence by explaining Clark's unusually flat affect while he was testifying. However, because the defense did not plead diminished capacity or show that Dr. Oneal's testimony was otherwise relevant, his expert testimony was properly excluded.

    1.    Dr. Oneal's testimony was not admissible to rebut the State's mens rea evidence

Clark argues that Dr. Oneal's expert testimony should have been admitted for the purpose of rebutting the State's mens rea evidence even though Clark did not plead diminished capacity because Dr. Oneal's testimony was not actually diminished capacity evidence. Alternatively, he argues that trial counsel's failure to assert diminished capacity did not warrant exclusion of Dr. Oneal's testimony. These arguments are inconsistent with both the record and the law.

Diminished capacity "allows a defendant to undermine a specific element of the offense, a culpable mental state, by showing that a given mental disorder had a specific effect by which his ability to entertain that mental state was diminished." *State v. Gough*, 53 Wn. App. 619, 622, 768 P.2d 1028 (1989). The intent to assert diminished capacity must "be declared pretrial." *State v. Harris*, 122 Wn. App. 498, 506, 94 P.3d 379 (2004) (citing CrR 4.7(b)(1), (2)(xiv)). Pretrial disclosure is required because when asserting diminished capacity, the defense "must obtain a

9

corroborating expert opinion and disclose that evidence to the prosecution pretrial," giving the State a reasonable opportunity to decide whether to obtain its own evaluation "[d]epending on the strength of the defense's showing." *Id.* (citing CrR 4.7(b)(1), (b)(2)(viii), (g); *In re Pers. Restraint of Hutchinson*, 147 Wn.2d 197, 204, 53 P.3d 17 (2002)). Diminished capacity evidence is thus distinguished from observation testimony about relevant facts tending to rebut the State's mens rea evidence because diminished capacity requires an expert diagnosis of a mental disorder and expert opinion testimony connecting the mental disorder to the defendant's inability to form a culpable mental state in a particular case. *Atsbeha*, 142 Wn.2d at 918.

Clark first contends that he was not required to plead diminished capacity because Dr. Oneal's expert testimony was not actually diminished capacity evidence. The record indicates otherwise. Even though trial counsel rejected the diminished capacity label, the primary intended purpose for Dr. Oneal's testimony in this case was to rebut the State's mens rea evidence on the basis that Clark's clinically evaluated intellectual deficits impaired his ability to understand and assess the risks of his behavior, thereby reducing the likelihood that Clark acted with a culpable mental state when he shot D.D. As the trial court appropriately recognized, that is precisely the purpose of diminished capacity evidence. *See, e.g., id.*; *State v. Greene*, 139 Wn.2d 64, 73-74, 984 P.2d 1024 (1999). The label

10

that trial counsel attaches to its proffered evidence cannot change the actual purpose for which the evidence is offered. *Cf. Cienfuegos*, 144 Wn.2d at 227-28 (considering evidence regarding the defendant's ability to form the requisite mental state as evidence of diminished capacity even though trial counsel did not request a diminished capacity instruction). It is clear from the record that the actual purpose for Dr. Oneal's expert testimony was to establish Clark's diminished capacity.[7]

Clark also argues that Dr. Oneal's testimony was not diminished capacity evidence because Dr. Oneal would *not* have testified that Clark "lacked the capacity or ability to form the requisite mens rea." Pet. for Review at 15. This argument shows only that even if Clark had pleaded diminished capacity, Dr. Oneal's testimony might still be inadmissible because it did not meet the relevancy threshold. It does not change the purpose for which the evidence was offered. And while Clark argues on review that we should relax the relevancy threshold for expert testimony of diminished capacity, he does not show it is incorrect or harmful. *See W.G. Clark Constr. Co. v. Pac. Nw. Reg'l Council of Carpenters*, 180 Wn.2d 54, 66, 322 P.3d 1207 (2014). Our diminished capacity precedent

---

[7] We therefore need not look to cases from other jurisdictions analyzing the admissibly of expert opinion testimony offered for purposes other than establishing diminished capacity. *See, e.g., State v. Burr*, 195 N.J. 119, 948 A.2d 627 (2008). To the extent Clark argues there were other purposes for Dr. Oneal's testimony, we address that issue below.

*State v. Clark*, No. 92021-4

merely sets forth a specific application of the general standard that expert testimony must be relevant and helpful to the trier of fact, which does not contravene a defendant's constitutional right to present evidence in his or her own defense. ER 401, 402, 702; *Jones*, 168 Wn.2d at 720; *Atsbeha*, 142 Wn.2d at 917-18. Moreover, a relaxed relevancy threshold for diminished capacity evidence would not change the fact that Clark did not plead diminished capacity in this case.

Clark argues in the alternative that we should treat trial counsel's failure to assert diminished capacity as merely a "pleading failure" that did not warrant exclusion of Dr. Oneal's testimony. Suppl. Br. of Pet'r at 16 (boldface omitted). However, on this record, the failure to assert diminished capacity was unquestionably a purposeful decision by trial counsel. That purposeful decision has consequences because while the State is always required to prove the defendant's *actual* culpable mental state, it is not automatically required to prove the defendant's *capacity* to form a culpable mental state; such capacity is presumed unless the defendant places it at issue. *State v. Johnson*, 150 Wn. App. 663, 671, 208 P.3d 1265, *review denied*, 167 Wn.2d 1012, 220 P.3d 208 (2009). If the defendant does not place his or her capacity at issue but is still allowed to present expert testimony intended to negate such capacity, the State has no way to meaningfully respond and the jury is left to evaluate an expert opinion with no context for assessing its relevance to the elements of charged offenses.

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

We do not question the principle that a criminal defendant has the constitutional right to present evidence in his or her own defense, and relevant observation testimony tending to rebut any element of the State's case, including mens rea, is generally admissible. However, expert opinion testimony that a defendant has a mental disorder that impaired the defendant's ability to form a culpable mental state is, by definition, evidence of diminished capacity. And where, as here, the defense does not plead diminished capacity, such testimony is properly excluded.

2.     Dr. Oneal's testimony was not admissible to explain Clark's affect during testimony

In addition to rebutting the State's mens rea evidence, the defense contends that Dr. Oneal's testimony should have been admitted for the purpose of explaining Clark's unusually flat affect while testifying. We do not rule out the possibility that expert testimony regarding a defendant's mental disorder may be introduced for purposes other than establishing diminished capacity, and admissibility for one purpose is not necessarily determinative of admissibility for another. *Astbeha*, 142 Wn.2d at 917 (admissibility of expert testimony, including testimony about a defendant's mental disorders, is determined according to the Rules of Evidence). However, Clark does not point to anything in Dr. Oneal's proposed testimony that would have helped the jury understand Clark's unusual affect, or that would even

13

support the proposition that Clark had an unusual affect. To the contrary, Dr. Oneal described "Clark's participation, motivation, focus, [and] effort" as being "entirely within normal limits."[8] 2 VRP (Oct. 4, 2012) at 276. The jury had the ability to evaluate Clark's affect to the same extent it had the ability to evaluate the affect of every testifying witness, and Clark has not shown that Dr. Oneal's expert testimony would have been helpful for that purpose.

B.    Ineffective assistance of counsel

Clark contends he received ineffective assistance of counsel because trial counsel did not object when the State was allowed to inform the prospective jurors that it was not seeking the death penalty. Assuming that Clark's trial counsel performed deficiently, he does not show prejudice as required by *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and thus cannot establish ineffective assistance of counsel. *Hicks*, 163 Wn.2d at 486-89; *State v. Townsend*, 142 Wn.2d 838, 846-49, 15 P.3d 145 (2001).

Considered in the full context of the case, Clark does not show that the State's remarks and the defense's failure to object were "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The jury was repeatedly and properly informed of its duties, and we presume it followed those instructions.

---

[8] Notably, the trial court stated that it did not notice anything particularly unusual about Clark's affect while he was testifying. 14 VRP (Apr. 16, 2013) at 1795. We are in no position to second-guess that observation.

14

*Id.* at 694-95. When the court made preliminary remarks to the jury panel, it reminded them that they would be expected to "accept the instructions of the court" and "base any decision upon the law and the facts uninfluenced by any other considerations." 5 VRP (Mar. 13, 2013) at 370. After the jury was selected, the court again reminded them their evaluation of the case must be "based solely on the evidence and my instructions on the law." *Id.* at 493. And the court's instructions on the law properly informed the jury that "[y]ou have nothing whatever to do with any punishment that may be imposed in case of a violation of the law. You may not consider the fact that punishment may follow conviction except insofar as it may tend to make you careful." CP at 277.

There is no indication that the jury disregarded its instructions or paid less attention to the evidence presented throughout Clark's trial because it was told that the death penalty was not at issue. *Cf. State v. Kalebaugh*, 183 Wn.2d 578, 586, 355 P.3d 253 (2015) (rejecting the possibility that a trial court's "offhand explanation of reasonable doubt at the beginning of this case" harmed the defendant in light of the fact that the jury was repeatedly and properly instructed on reasonable doubt and the presumption of innocence). There is also no reason to believe that a contemporaneous objection by defense counsel would have reduced any potential for prejudice more than the court's proper, written instructions did.

15

We thus hold that Clark has not carried his burden of showing prejudice and therefore has not established ineffective assistance of counsel.

C.     Cumulative error

Clark does not show any error, so the cumulative error doctrine does not apply.  *Coe*, 101 Wn.2d at 789.

## CONCLUSION

Expert testimony that a defendant suffered a mental disorder not amounting to insanity that impaired the defendant's ability to form a culpable mental state is diminished capacity evidence.  The trial court correctly recognized that and properly excluded Dr. Oneal's expert testimony because Clark did not assert or plead diminished capacity or show that Dr. Oneal's testimony was otherwise relevant.  We therefore have no reason to revisit *Atsbeha*'s three-part test for determining whether expert testimony of diminished capacity is admissible in accordance with the Rules of Evidence.  Moreover, the court properly allowed relevant observation testimony, which the defense relied on in its attempt to rebut the State's mens rea evidence.  Clark does not otherwise show reversible error.  We therefore affirm.

_____ _____

WE CONCUR:

_____

_____ _____

_____ _____

_____ _____

17

*State v. Clark (Anthony Tyrone)*, No. 92021-4
(Gordon McCloud, J., dissenting)

No. 92021-4

GORDON McCLOUD, J. (dissenting)—Anthony Clark was convicted of first

degree murder of his friend, D.D.[1] The State argued that Clark shot D.D. with

premeditated intent to kill in the course of stealing D.D.'s drugs; Clark admitted that

he shot D.D., but claimed that it was an accident because he thought the gun was not

loaded. Thus, the only question at trial was Clark's mental state. The trial court

therefore permitted the State to present substantial evidence regarding Clark's

premeditated intent. And the trial court ultimately instructed the jury on several

lesser included offenses—intentional second degree murder, reckless first degree

manslaughter, and negligent second degree manslaughter—all defined by mental

states less culpable than premeditation.[2] But it barred Clark from presenting most

of his proffered evidence refuting premeditated intent. Most critically, it excluded

---

[1] D.D. was a minor at the time—initials are used to protect the minor's privacy.

[2] *See State v. Jones*, 95 Wn.2d 616, 621-22, 628 P.2d 472 (1981) (recklessness and negligence are lesser mental states "included" in intent; defendant charged with intentional murder was entitled to manslaughter instruction where evidence of intoxication supported theory that killing was unintentional); *State v. Condon*, 182 Wn.2d 307, 319, 343 P.3d 357 (2015) (intentional murder is lesser included offense in premeditated murder).

1

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

expert testimony about Clark's intellectual disabilities that could have bolstered his accident defense, reasoning that such testimony is inadmissible unless the defendant pleads diminished capacity.

The majority approves this distinction between lay and expert testimony. It holds that lay "observation testimony" regarding Clark's intellectual disabilities was relevant to rebut the element of mens rea even though Clark did not plead a diminished capacity defense, but it reaches the opposite conclusion about expert testimony on Clark's disability. Majority at 8 ("The court . . . properly allowed relevant observation testimony tending to rebut the State's mens rea evidence and properly excluded expert testimony that was not relevant absent a diminished capacity defense."). Thus, the majority holds that the *strongest* evidence of Clark's intellectual disabilities—a psychologist's testimony that Clark had developmental disabilities, exceedingly low intelligence quotient (IQ) scores, and a diagnosis of mild mental retardation—was inadmissible to support the defense's accident and/or lesser included offense theories. 2 Verbatim Report of Proceedings (VRP) (3.5 Hr'g) (Oct. 4, 2012) at 268-74, 314, 283.

This distinction is illogical and violates the constitutional right to present a defense. I respectfully dissent.

*State v. Clark (Anthony Tyrone)*, No. 92021-4
(Gordon McCloud, J., dissenting)

I.    The Trial Court Admitted Certain Lay Observation Testimony Supporting the Defense, but Excluded the More Neutral, More Persuasive Medical Expert Testimony Supporting the Same Defense Theory

Clark testified that on the morning of the shooting, he was walking from his apartment to a neighborhood barbecue when he saw D.D.—an acquaintance from school—standing at a crosswalk. The two talked briefly, and Clark then invited D.D. over to his apartment.

At the apartment, D.D. opened his coat pocket and showed Clark a .22 caliber gun and an M&M's container filled with pieces of crack cocaine, and then asked Clark to help him sell the drugs. Clark testified that he went upstairs to ask his neighbors to buy the drugs, but they declined, so Clark came back downstairs and suggested that he and D.D. pawn his mother's gold necklace for money instead.

According to Clark, the necklace was in a jewelry box on the top shelf of a bedroom closet. Clark tried but failed to reach the box, so D.D decided to try. He told Clark to move out of his way. Before climbing up to reach for the box, though, D.D. disarmed: he pulled the .22 caliber gun out of his coat pocket, removed the magazine, and handed the gun without the magazine to Clark. D.D. kept the magazine. Clark testified that as D.D. reached into the closet, still holding that magazine, Clark sat on the floor and played with the gun. Thinking the gun was

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

unloaded because the magazine was out,[3] Clark aimed it at the ceiling of the closet and pulled the trigger. The bullet struck D.D. in the back of his head.

Clark claimed that he then tried to resuscitate D.D. 13 VRP (Apr. 15, 2013) at 1658-59, 1663. He did one compression. *Id.* at 1663. He then put the magazine back into the gun and hid both the gun and the drugs inside his toilet. *Id.* at 1672-73. (That's where officers later found them.) Clark then went upstairs to ask his neighbors for help disposing of a body. He testified that he was crying and shaking at the time. *Id.* at 1666, 1669. As discussed below, that contradicted his neighbors' testimony that Clark was oddly calm when talking about the body.

The prosecution argued that Clark was a sophisticated killer, too familiar with guns to have thought that D.D.'s gun was unloaded just because the magazine had been removed. 14 VRP (Apr. 16, 2013) at 1764-65. To support that theory, the State offered testimony by three of Clark's neighbors regarding conversations that they had with Clark on the day of the shooting. These neighbors all agreed that Clark asked them to buy or help sell crack cocaine first, and then later asked them

---

[3] Although Clark said that he thought the gun was unloaded at the time he pulled the trigger, he also testified that he knew that guns were dangerous and that he thought the gun was capable of firing a bullet at some point in time. 13 VRP (Apr. 15, 2013) at 1595, 1660 ("Q. Did you, at any time[,] think[ ] that you could fire a bullet out of that gun? A. Yes. Q. Did you think it was loaded? A. No.").

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

to help him dispose of a body. Specifically, they all testified that Clark told them that a friend had given him the cocaine to sell so that he could buy school clothes— even though Clark was no longer in school. 8 VRP (Mar. 19, 2013) at 848, 854, 904-05; 9 VRP (Mar. 20, 2013) at 1002-07, 1026-27. Some said that Clark then left and came back to talk about the body; others said that Clark stayed and talked about the body. 8 VRP (Mar. 19, 2013) at 850-53; 9 VRP (Mar. 20, 2013) at 1007-08, 1032. Two neighbors testified that Clark said he "popped" the person in the head with a "deuce deuce." 8 VRP (Mar. 19, 2013) at 851, 853, 907. All three neighbors recounted that Clark said he did that because that person was hitting "his baby's mom" and that he was taught never to let anyone harm his baby's mom—even though Clark had no children. 8 VRP (Mar. 19, 2013) at 850; 9 VRP (Mar. 20, 2013) at 1035. Despite Clark's confession, the neighbors remained unsure whether Clark was joking, partly because of his oddly calm demeanor and partly because he sometimes said he was joking. 8 VRP (Mar. 19, 2013) at 850-51, 863-64, 894, 906- 07, 912; 9 VRP (Mar. 20, 2013) at 1010. But Clark eventually took one neighbor to the garbage can behind their apartment building and showed her D.D.'s hidden body. 8 VRP (Mar. 19, 2013) at 863-66, 894, 912; 9 VRP (Mar. 20, 2013) at 1012.

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Clark (Anthony Tyrone)*, No. 92021-4
(Gordon McCloud, J., dissenting)

The trial court did permit Clark to present lay testimony that he was in high school "beyond normal age" and attended special education classes. VRP (Dec. 17, 2012) at 20-21. As discussed further below, though, the trial court excluded the bulk of the defense-proffered evidence on Clark's diagnoses of "mild mental retardation"—evidence from a neutral expert witness. 2 VRP (3.5 Hr'g) (Oct. 4, 2012) at 314. On the basis of the testimony about learning problems alone, though, the defense argued—apparently not persuasively—that Clark had below average intelligence and simply mishandled the gun:

> Would I characterize Anthony as a man? No. You're talking about, at the time, a 20 year old who had just graduated from special education. . . .
>
> . . . .
>
> . . . As far as he knew at the time, the bullets had been removed from the gun . . . which is probably exactly what [D.D.] thought when he handed that to Anthony. And he probably did that knowing that *Anthony's not your average 20 year old.*

15 VRP (Apr. 17, 2013) at 1816, 1826 (emphasis added).

The defense sought to bolster the lay testimony supporting its accident theory with the far more persuasive testimony of Dr. Brent Oneal, a psychologist who personally evaluated Clark and diagnosed him with "mild retardation." 2 VRP (3.5 Hr'g) (Oct. 4, 2012) at 260, 314. The State acknowledged that this testimony tended

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Clark (Anthony Tyrone)*, No. 92021-4
(Gordon McCloud, J., dissenting)

to rebut the element of mens rea, but moved to exclude the testimony anyway, arguing that it would be too confusing for jurors in the absence of a diminished capacity defense:

> [T]he jurors would likely be confused about how to evaluate [Dr. Oneal's] evidence. They would wonder whether a "mentally retarded" person is able to form a specific intent like a person of normal intelligence. Such confusion is both needless and patently unfair to the State where the defense has not raised a diminished capacity defense.

Clerk's Papers (CP) at 218. The defense responded that Dr. Oneal's testimony was also relevant to "support a finding of recklessness or criminal negligence" as opposed to premeditated intent because the diagnosis and associated explanation made it less likely that Clark knew or understood the risks posed by firing the gun. CP at 225.

The trial court agreed with the State. It allowed certain lay testimony regarding Clark's intellectual deficits and gave lesser included offense instructions on manslaughter (reckless and negligent), but it excluded Dr. Oneal's more educated, more neutral medical testimony on the same point as unduly confusing in the absence of a diminished capacity defense.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Clark (Anthony Tyrone)*, No. 92021-4
(Gordon McCloud, J., dissenting)

II.    The Majority Approves This Distinction between Lay and Expert Testimony Because It Erroneously Equates All Expert Testimony about Intellectual Deficits with a Diminished Capacity Defense

"Diminished capacity is a mental condition not amounting to insanity which prevents the defendant from possessing the requisite mental state necessary to commit the crime charged." *State v. Furman*, 122 Wn.2d 440, 454, 858 P.2d 1092 (1993) (citing *State v. Ferrick*, 81 Wn.2d 942, 944, 506 P.2d 860 (1973)). The majority is correct that in order to assert a diminished capacity defense, a defendant must meet two threshold criteria: (1) the defendant must present "substantial evidence of such a condition" and (2) "the evidence must logically and reasonably connect the defendant's alleged mental condition with the asserted inability to form the required specific intent to commit the crime charged." *Ferrick*, 81 Wn.2d at 944-45); *State v. Griffin*, 100 Wn.2d 417, 419, 670 P.2d 265 (1983).

If Clark had offered Dr. Oneal's testimony as evidence that he lacked the *capacity* or *ability* to act intentionally when he shot D.D., then I might agree with the majority that it was properly excluded. The reason is that Dr. Oneal did not testify that Clark was *incapable* of intentionally shooting D.D. and thus his testimony would likely not satisfy the second prerequisite to asserting a diminished capacity defense. But, as explained above, Clark did not offer Dr. Oneal's testimony

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

to establish a diminished capacity defense—he offered it to bolster his accident theory. In other words, Clark never argued that he was incapable of shooting D.D. intentionally; he argued that he did not *in fact* intend to shoot him.

The majority fails to appreciate this distinction. Relying on *State v. Atsbeha*, 142 Wn.2d 904, 918, 16 P.3d 626 (2001) and *State v. Greene*, 139 Wn.2d 64, 73-74, 984 P.2d 1024 (1999), the majority concludes that expert testimony—i.e., a "clinical[] evaluat[ion]"—advances a diminished capacity defense any time it shows that "intellectual deficits impaired [a defendant's] ability to understand and assess the risks of his behavior, thereby reducing the likelihood that [he] acted with a culpable mental state." Majority at 10. But neither case stands for this principle. *Atsbeha* addressed expert testimony that the defendant could intentionally deliver drugs but harbored a delusion that he was cooperating in a sting operation with the undercover officer who asked him to make the delivery. 142 Wn.2d at 907-08, 910-11. It held that this testimony was relevant to an insanity defense, but not to a diminished capacity defense (because it did not negate specific intent). *Id.* at 920. And *Greene* held that testimony regarding the defendant's dissociative identity disorder (DID) was properly excluded as unhelpful because, given the state of the relevant science at the time, "it was not possible to reliably connect the symptoms

*State v. Clark (Anthony Tyrone)*, No. 92021-4
(Gordon McCloud, J., dissenting)

of DID to the sanity or mental capacity of the defendant." 139 Wn.2d at 79. These cases are straightforward applications of our Evidence Rules in the context of insanity and diminished capacity pleas. They do not limit the other purposes for which a defendant might admit expert testimony on his cognitive abilities. In other words, diminished capacity evidence is a subset of evidence concerning cognition and mens rea. But cognition and mens rea are far bigger categories.

III.  By Excluding Defense Evidence That Could Rebut the State's Evidence on the Element of Mens Rea, the Trial Court Violated Clark's Constitutional Right To Present a Defense

"Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). That right is based on the right to due process of law (U.S. CONST. amend. XIV; CONST. art. I, § 3) and the rights of an accused in a criminal proceeding (U.S. CONST. amend. VI; CONST. art. I, § 22). *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010) ("'The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations.'" (quoting *Chambers*, 410 U.S. at 294)).

To be sure, this right to present evidence extends only to relevant evidence. *State v. Hudlow*, 99 Wn.2d 1, 16, 659 P.2d 514 (1983). But evidence is relevant if

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

it tends to make more or less probable the existence of any fact that is of consequence to the outcome. ER 401. In this case, the trial court concluded that Dr. Oneal's testimony was not relevant unless it was offered to support a diminished capacity defense. The majority affirms because it concludes that Clark really *was* advancing such a defense, even though he did not formally plead it—indeed, Clark specifically denied it.

For the reasons given in Part II above, I disagree with that conclusion; Clark's accident defense was not the same thing as a diminished capacity defense. Thus, this case requires us to answer the following question: Where a defendant offers expert testimony regarding his or her intellectual deficits to rebut the State's theory of motive or intent, do the prerequisites to the presentation of a diminished capacity defense still apply?

This is a question of first impression in Washington, but the New Jersey Supreme Court has addressed it. In *State v. Burr*, the State charged Burr, a piano teacher, with sexual assault and endangering the welfare of a child based on allegations that he had fondled one of his students. 195 N.J. 119, 122, 948 A.2d 627 (2008). As proof of Burr's sexual deviance, the State presented evidence that Burr would often allow his students to sit on his lap. *Id.* at 125. To rebut the resulting

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

inference that he was intentionally grooming these students for sexual abuse, Burr offered evidence that he suffered from Asperger's Syndrome and that, as a result of this condition, he had a limited understanding of what constitutes basic and appropriate social interactions between adults and children. *Id.* at 129. He also offered that evidence to assist the jury in assessing his unusual demeanor at trial. *Id.* The trial court excluded this evidence, ruling that such evidence was admissible only to support a diminished capacity defense, which Burr was not seeking. *Id.* The New Jersey Supreme Court reversed, explaining that even though Burr was not seeking a diminished capacity defense, evidence of this condition remained relevant and therefore should have been admitted to support his claim of innocence. *Id.* at 129-30. As the court explained, evidence of Burr's developmental condition was so highly relevant and significant to his claim of innocence that it "def[ied] specific enumeration." *Id.* at 130.

Evidence of Clark's substantial intellectual deficits and mild mental retardation diagnosis was equally relevant and significant to his argument that D.D.'s death was an accident or, alternatively, that it was not premeditated or intentional. To convict Clark of first degree murder, the State had to prove premeditated intent beyond a reasonable doubt. All Clark needed to do was cast

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

doubt on the State's evidence of premeditated intent. He could also show that the homicide was an accident (and not premeditated or intentional or reckless). Clark tried to do both by testifying that he believed the gun was unloaded at the time of the shooting and that he did not recognize the substantial risk involved in pulling the trigger without first checking the chamber for a bullet. The defense focused on Clark's poor reasoning abilities. Evidence that he was mentally retarded with an exceedingly low IQ score (scoring in the bottom first and second percentile of others his age in perceptional reasoning, working memory, and verbal comprehension) was certainly relevant to his claim. Evidence of Clark's mental process was also relevant because it rebutted the State's evidence of premeditated intent. *See State v. Sexton*, 311 N.J. Super. 70, 88, 709 A.2d 288 (1998) (holding in an analogous shooting case that evidence of the defendant's limited mental ability and his status as a special education student was relevant to his credibility about whether he actually believed the gun was unloaded and whether he acted recklessly), *aff'd on other grounds*, 160 N.J. 93, 733 A.2d 1125 (1999).

Thus, I would hold that the trial court erred by excluding expert testimony about Clark's intellectual deficits as irrelevant in the absence of a diminished

13

*State v. Clark (Anthony Tyrone)*, No. 92021-4
(Gordon McCloud, J., dissenting)

capacity defense.[4] *Jones*, 168 Wn.2d at 720-21 (exclusion of defense-proffered evidence that effectively precludes a criminal defendant entirely from being able to present his version of the events or establishing his innocence violates his or her right to present a defense). Based on the analysis above, the evidence was highly relevant and its exclusion violated not just the Rules of Evidence but also the right to present a defense.

IV.  The Exclusion of Expert Testimony on Clark's Mild Mental Retardation Was Not Harmless Error

A trial court's decision to exclude defense evidence in a criminal trial is generally subject to harmless error analysis under the "'overwhelming untainted evidence' test." *State v. Lord*, 161 Wn.2d 276, 295, 165 P.3d 1251 (2007) (quoting *State v. Smith*, 148 Wn.2d 122, 139, 59 P.3d 74 (2002) (citing *State v. Guloy*, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985))). Under that test, error is harmless if the

---

[4] The United States Supreme Court has held that where state evidentiary rules bar evidence of a defendant's diminished capacity to form the requisite mens rea as irrelevant absent a full-fledged insanity defense, then that state court can exclude such evidence under its state evidentiary rules without violating the federal right to present a defense. *Clark v. Arizona*, 548 U.S. 735, 760-79, 126 S. Ct. 2709, 165 L. Ed. 2d 842 (2006). But our state laws make such evidence relevant and admissible where, as here, they bear on the defendant's mens rea and rebut the State's evidence of mens rea. The Supreme Court's holding in *Clark* is therefore inapplicable here. *See id.* at 772-78 (concluding, that if a State has such a rule barring a defendant's mental disease and incapacity evidence, then that rule might be a sufficiently "good reason" to satisfy federal due process requirements). This is likely the reason that neither party cited it.

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

untainted, admitted evidence is so overwhelming as to necessarily lead to a finding of guilt. *Id.* at 296. "[E]rror is not prejudicial if the evidence is of minor significance when compared to the overall weight of the evidence." *Id.* (citing *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997)). Where, as here, the error is of constitutional magnitude, however, the error is deemed harmless only if the State proves "'beyond a reasonable doubt that any reasonable jury would have reached the same result without the error.'" *Smith*, 148 Wn.2d at 139 (citing *State v. Whelchel*, 115 Wn.2d 708, 728, 801 P.2d 948 (1990))).

At trial, the State's theory was that Clark lured D.D. to his apartment to kill him and steal his drugs. Clark denied that he premeditated or intended the killing because he thought the gun was not loaded. Clark also denied that he acted recklessly, claiming that he did not recognize the substantial risk involved in pointing a gun that he believed was unloaded at someone and then pulling the trigger without first checking to see if a bullet was chambered.

The State presented evidence in support of its theory that showed that Clark had at least some knowledge about guns (or gun rhetoric). He referred to the .22 caliber gun as a "deuce deuce," called the magazine a "clip," acknowledged that guns were dangerous, admitted that he thought the particular gun was capable of

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

shooting a bullet, and was able to insert the magazine back into the gun before hiding it in his toilet. The jury also heard that Clark had graduated from high school,[5] that he confessed to shooting D.D. because D.D. had struck his fictitious "baby's mom," and that Clark was strangely calm during that confession.

To rebut the State's evidence that he was a cold, calculated killer, Clark offered lay and expert testimony about how he was slow and did not process information the way other people his age did. But the trial court excluded most of it. It barred all testimony from Dr. Oneal about Clark's substantial intellectual deficits.[6] Dr. Oneal would have testified, based on his personal testing and evaluation of Clark, that Clark was born prematurely and with significant developmental delays, was highly suggestible and therefore prone to change his story when pressured, and had a very low IQ score indicating that he had extremely poor perceptional reasoning, working memory, and verbal comprehension skills compared to others his age. 2 VRP (3.5 Hr'g) (Oct. 4, 2012) at 268, 271-74, 283.

---

[5] The jury was not informed that Clark had not technically graduated from high school; he only aged out.

[6] The trial court also barred certain lay testimony from Clark's mother on this same topic. She would have confirmed that he was in special education since he was four years old, that his so-called friends would take advantage of him because of his limitations, and that he could not drive because he could not pass the driver's license exam despite several attempts. 11 VRP (Mar. 26, 2013) at 1373-74.

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Clark (Anthony Tyrone)*, No. 92021-4
(Gordon McCloud, J., dissenting)

The only evidence the trial court clearly permitted the jury to hear about Clark's intellectual deficits was that he was enrolled in special education with an individualized education plan (but not how long or why he was on it); that neighbors thought he was slow (but not the expert testing to show exactly how slow he really was); and that he was on Social Security disability (but not that he was on it because of his mild mental retardation diagnosis).[7] In essence, the trial court excluded the most neutral, educated, and meaningful evidence about Clark's intellectual deficits.

The only real issue in this case was intent. The trial court excluded proffered defense evidence that was directly relevant to mens rea and that rebutted the State's evidence of premeditation. The error might well have affected the outcome. We are especially certain of this given the fact that the trial court felt that there was sufficient evidence of mental states less culpable than premeditation to support jury instructions on intentional, reckless, and negligent homicide. CP at 288-95. I would therefore conclude that the trial court's error was not harmless under either the evidentiary or constitutional standards.

---

[7] It was unclear from the court's different rulings whether it would have allowed Clark to testify about the reason he was on Social Security disability (i.e., because of his mild mental retardation diagnosis). 7 VRP (Mar. 18, 2013) at 660-63.

17

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Clark (Anthony Tyrone)*, No. 92021-4
(Gordon McCloud, J., dissenting)

CONCLUSION

The trial court improperly excluded evidence of Clark's intellectual deficits

in violation of the Evidence Rules and Clark's constitutional right to present a

defense. This error was not harmless. I therefore respectfully dissent.

18

*State v. Clark (Anthony Tyrone)*, No. 92021-4
(Gordon McCloud, J., dissenting)

Geo. McCloud, J.

Owens, J.

Madsen, J.

Fairhurst, C.J.