# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 77013-6-I |
| Respondent, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| PHILLIP LINCH SCHLOREDT, | ) ) | |
| Appellant. | ) | FILED: December 24, 2018 |
| | ) | |

BECKER, J. —Appellant Phillip Schloredt lit a container full of gasoline and threw it in the direction of a police officer. The officer's car and several nearby vehicles were set aflame. A jury convicted Schloredt of first degree arson. He appeals his conviction on a number of grounds, including that the trial court improperly excluded layperson testimony regarding Schloredt's mental illness. We affirm.

## FACTS

The alleged arson occurred on September 21, 2015. Seattle Police Officers John Paquette and James Norton responded to a 9-1-1 call at the home where appellant Phillip Schloredt lived with his mother. The call was from Schloredt's mother. She said that her son, 56 years old at the time of trial, had a history of mental illness and was declaring that he was going to kill himself. She requested that someone come to her house to take Schloredt to a hospital.

When the officers arrived at the scene, Schloredt's gray truck was parked in the middle of the street along with other vehicles that were blocking traffic. Schloredt was dragging a container full of gasoline towards his truck. Officer Paquette testified that when he got out of his police car, he saw flames shoot up and the container landed in the bed of the pickup truck with the flaming liquid splashing onto the hood of the patrol car. The flames engulfed the truck, Officer Paquette's car, and several other cars parked on the street. The officers' dash-cam video, which captured the dramatic scene, was shown to the jury at trial. Using their fire extinguishers, and aided by a neighbor with a garden hose, the officers were able to extinguish the blaze. In the chaos, Schloredt ran away. A short time later, officers found him hiding not far away in a blackberry thicket and arrested him.

The State charged Schloredt with arson in the first degree, RCW 9A.48.020(1)(a). This charge required the State to prove that Schloredt "knowingly and maliciously" caused a fire or explosion which was "manifestly dangerous to any human life, including firefighters." RCW 9A.48.020(1)(a).

Before trial, Schloredt moved to be found incompetent. Schloredt was evaluated and diagnosed with an unspecified schizophrenia spectrum and other disorders. At the time, Schloredt was taking antipsychotic medication and an antidepressant. The evaluator concluded that Schloredt was competent to stand trial and the trial court agreed.

Schloredt's defense was a general denial. He did not assert a defense of diminished capacity and he did not plan to present expert testimony regarding his mental state.

The trial in March 2017 lasted four days. The jury deliberated for two hours before convicting Schloredt as charged. His sentence of 108 months was within the standard range.

## ANALYSIS

### Rebutting Proof of Malice

Schloredt contends the trial court improperly excluded key evidence offered to rebut the State's proof of malice.

The term "malice" imports "an evil intent, wish, or design to vex, annoy, or injure another person. Malice may be inferred from an act done in willful disregard of the rights of another, or an act wrongfully done without just cause or excuse, or an act or omission of duty betraying a willful disregard of social duty." RCW 9A.04.110(12). The dash-cam video was the primary evidence the State relied on to prove malice. The jury also heard the recording of a call Schloredt made from jail on the night of the fire to his friend, Louie Gaddini. In the call, Schloredt began by asking, "Was that awesome or what?" When Gaddini suggested that Schloredt would be charged with arson, Schloredt answered that he would also be charged with assaulting a police officer. Gaddini told Schloredt that he burned a police car, to which Schloredt responded, "Did I? Sweet. That's good."

To rebut the evidence of malice, Schloredt wished to present testimony by his mother and sister that he was mentally ill and that he had not been taking his prescribed medications at the time of the incident. The State successfully moved in limine to exclude such evidence as irrelevant because Schloredt was not asserting a diminished capacity defense.

A diminished capacity defense "allows a defendant to undermine a specific element of the offense, a culpable mental state, by showing that a given mental disorder had a specific effect by which his ability to entertain that mental state was diminished." State v. Clark, 187 Wn.2d 641, 650, 389 P.3d 462 (2017). Clark, a decision issued only a few weeks before Schloredt's trial, was the principal authority considered by the trial court on the State's motion to exclude. Clark holds that expert opinion testimony will not be admitted to prove what is functionally a diminished capacity defense unless that defense is affirmatively pleaded.

The defendant in Clark had killed the victim with a single gunshot to the head. Charged with premeditated murder, he claimed the shooting was an accident. Thus, as in the present case, the primary disputed issue was the defendant's level of intent. Clark, 187 Wn.2d at 645. Although Clark did not assert diminished capacity as a defense, he sought to present an expert witness who would testify that he scored at the very bottom in standardized intelligence tests. The trial court excluded the expert testimony as irrelevant and confusing to the jury. The court did, however, rule that the defendant could elicit relevant observation testimony by lay witnesses concerning his intellectual deficits,

4

including that he had been enrolled in special education, received Social Security disability benefits and was generally considered as "slow" by people who knew him. Clark, 187 Wn.2d at 646.

On appeal, the Supreme Court approved the trial court's ruling. It was clear the purpose for offering the expert's testimony was to establish diminished capacity, i.e., that Clark's intellectual deficits "impaired his ability to understand and assess the risks of his behavior, thereby reducing the likelihood that Clark acted with a culpable mental state" when he shot the victim. Clark, 187 Wn.2d at 651.

> We do not question the principle that a criminal defendant has the constitutional right to present evidence in his or her own defense, and relevant observation testimony tending to rebut any element of the State's case, including mens rea, is generally admissible. However, expert opinion testimony that a defendant has a mental disorder that impaired the defendant's ability to form a culpable mental state is, by definition, evidence of diminished capacity. And where, as here, the defense does not plead diminished capacity, such testimony is properly excluded.

Clark, 187 Wn.2d at 653.

Here, the trial court applied Clark when ruling on the State's motion in limine. The court ruled that Schloredt's mother and sister could testify to their observations of Schloredt's behavior, but as lay witnesses they could not testify about his mental health diagnoses or history, and they could not say he was refusing to take prescribed medications for his mental illness. Medication, the court ruled, "is a back doorway of getting into diagnosis." Schloredt argues that the court's ruling excluded "highly probative" evidence from which the jury could have found that he did not act maliciously.

5

Evidentiary rulings are reviewed for abuse of discretion. If relevant defense evidence is excluded, we review as a matter of law whether the exclusion violated the constitutional right to present a defense. Clark, 187 Wn.2d at 648-49.

Schloredt did not formally assert a diminished capacity defense. Unlike the defendant in Clark, he did not even try to offer expert testimony about his mental state. He is correct that offering evidence to raise a reasonable doubt on the essential element of malice is not equivalent to a claim that he lacked the capacity to act maliciously. Testimony by lay witnesses who observed what the defendant did and heard what he said is potentially relevant to a mens rea issue if it shows what in fact was on the defendant's mind when he committed the act at issue. Clark v. Arizona, 548 U.S. 735, 757, 126 S. Ct. 2709, 165 L. Ed. 2d 842 (2006). Nevertheless, we conclude the line drawn by the trial court did not impinge upon Schloredt's constitutional right to challenge the State's proof of malice.

As the trial proceeded, the court permitted a substantial amount of evidence that Schloredt's family members believed he was in a mental health crisis of some kind. Officer Norton testified on cross-examination that he was dispatched for a possible suicidal person and that Schloredt's mother told him her son was suicidal. Officer Paquette testified similarly on cross-examination. Schloredt's mother testified about Schloredt's erratic behavior earlier that day, which led her to call "the professionals at the crisis center" to get help. She testified that when she called 9-1-1, she asked the dispatcher to send "the order

for someone to take him to a hospital." Schloredt's sister testified that earlier in the day, she attempted to take the lock off Schloredt's door "so the crisis health people could come take him into the hospital for evaluation."

Schloredt himself testified on direct examination that before the fire he made statements about wanting to kill himself. Pressed by the prosecutor on cross-examination, he admitted that he was angry at his mother and sister, that he intentionally parked his truck in the middle of the street, that he went back to get the container of gas while carrying a lighter, and that when he saw the officer approaching he lit the container on fire. But when the prosecutor asked him to admit that he threw the flaming gas container at the officer, he denied it. "That's not what happened at all." He testified that when he lit the fire, he had "this vision of punishing my mother and sister by pouring this gasoline on my head and letting them watch it burn." But when he felt how hot the fire was, he had a "moment of clarity . . . where I decided whatever I was doing was insane, you know, and that I should be doing something else. . . . I decided this is really stupid. This is going to be a really bad, really painful ordeal. . . . I flicked it, but just barely flicked it away from me and Mom like this, and it flew over, flew and landed, what, 10 feet. It didn't even go 10 feet." "And the only thing I did was try to kill myself with that gasoline and that's the goddamn truth, I swear to God." He said, "This whole thing was to punish them. The reason for the fire was for one reason, to punish them for not being my family."

Schloredt testified about what was on his mind and presented the observations of his behavior by his mother and sister to support his position that

he did not set the fire maliciously. Schloredt was able to argue in closing that his behavior was not rational and that it was the result of a personal crisis for which his family believed he needed professional help. The trial court properly excluded evidence of a specific diagnosis of mental illness, which would have been hearsay without an expert witness. The court correctly perceived that allowing observational testimony that Schloredt behaved differently when he was not taking prescribed medication would have been a "back doorway" into expert diagnosis.

The trial court's reasoning is equally applicable to Schloredt's alternative argument that the excluded evidence was admissible as res gestae, to complete the story of the crime. See State v. Powell, 126 Wn.2d 244, 263, 893 P.2d 615 (1995). There was extensive testimony about the events leading up to the fire from which the jury could deduce that Schloredt's act was one of a troubled individual. He fails to show that nonexpert testimony about schizophrenia and prescription medication was necessary to give the jury a more complete picture.

We conclude the excluded evidence was not relevant to rebutting the State's proof of the element of malice. The trial court's ruling was not an abuse of discretion.

Admission of Phone Conversation

Six days after the incident, the jail recorded a telephone call between Schloredt and his friend Gaddini. Gaddini talked to Schloredt about bail and sentencing guidelines, and he told Schloredt of a friend's suggestion that Schloredt's best defense would be to act insane. After Schloredt testified, the

court permitted the prosecutor to introduce, for rebuttal, a redacted excerpt of the recording for the stated purpose of showing that Schloredt's testimony about his mental health was feigned or exaggerated. In the excerpt, references to Gaddini's friend were redacted. As the jury heard it, Gaddini himself advised Schloredt "to act insane":

| SCHLOREDT: | Hey, Louie. |
| [GADDINI]: | Hey- Hey Phil. |
| SCHLOREDT: | How are you? (Unintelligible.) |
| [GADDINI]: | Phil? |
| SCHLOREDT: | Yeah. |
| [GADDINI]: | What's goin' on buddy? |

There is a gap for redacted conversations.

| [GADDINI]: | . . . Your best bet is to act insane. |
| SCHLOREDT: | Yeah. |
| [GADDINI]: | You know what I mean? |
| SCHLOREDT: | Yeah. |
| [GADDINI]: | That you're retarded and you know, blah, blah, blah. That's the best bet you could do. You blacked out. You're a former drug addict and shit like that. |
| SCHLOREDT: | Yeah. |

Schloredt then testified on redirect that the advice to "act crazy" was "stating the obvious" in view of the fact that he had a "history of crisis" since he was 19 years old and was "diagnosed with a significant illness."

Schloredt contends that the trial court erred in playing the recording notwithstanding his objection that it was hearsay. He argues that the recording was several levels of hearsay, in that Gaddini, who was not testifying, was relaying advice from his friend, a third party who also was not testifying.

"Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered to prove the truth of the matter asserted.

9

ER 801(c). Gaddini's advice to Schloredt was not offered to prove that Schloredt's best defense was to act insane. It was offered to show that Schloredt heard a suggestion that his best defense was to act insane and that he agreed with it. Because Gaddini's part of the conversation was not offered for the truth of the matter asserted, Schloredt's hearsay objection was not well taken.

Schloredt also argued that by playing the recorded call with its suggestion that Schloredt was faking a mental illness, the prosecutor opened the door to the previously excluded evidence that he had a long-standing diagnosis of schizophrenia and was not taking the medication prescribed for it. Noting again that Schloredt had not raised an affirmative defense, the trial court declined to admit the requested evidence. Schloredt contends this ruling was part of a pattern of allowing the State to introduce evidence that he acted maliciously while unfairly preventing him from introducing relevant evidence in response.

Whether a party has opened the door to the admission of otherwise inadmissible evidence is within a trial court's discretion. State v. Wafford, 199 Wn. App. 32, 34, 397 P.3d 926, review denied, 189 Wn.2d 1014, 402 P.3d 822 (2017). We find no abuse of discretion. Schloredt was able to make his point that he had mental issues, albeit unspecified ones. For the reasons already discussed, the trial court had a tenable basis for excluding nonexpert testimony about Schloredt's diagnosis and his medication.

Prior Act of Burning

About two weeks before the charged arson, Schloredt had an argument with his mother about his storage of excess construction materials at the house. When she walked out instead of continuing to listen to him, Schloredt set the living room couch on fire. His mother easily put out the fire, but called 911 for assistance. During motions in limine, the trial court provisionally granted Schloredt's motion to exclude evidence of this incident under ER 404(b).

Schloredt's opening statement initiated his theme that he was suffering a personal crisis on the day in question. He said the evidence would show that he was threatening suicide and severe self-harm.

On the second day of trial, the State moved for permission to introduce evidence about the previous couch-burning incident, arguing that Schloredt opened the door to it in his opening statement. The trial court granted the motion. The State elicited testimony about the couch-burning from the responding officer and from Schloredt's mother.

Schloredt contends the court abused its discretion in allowing this testimony. We disagree. His opening statement suggested, without expressly saying so, that he was so debilitated by personal crisis that he was not capable of forming malicious intent. This is the essence of diminished capacity, a defense that has to be pleaded affirmatively and supported by expert testimony. Because Schloredt did not plead diminished capacity, the State was unprepared to offer expert testimony about his mental state. It was fair to allow the State to

11

rebut the implied defense with evidence that might otherwise have been excluded.

And in any event, admission of the couch-burning incident was permissible under ER 404(b) as proof of Schloredt's intent. "Evidence of prior misconduct is generally admissible to show intent and the absence of accident when a defendant admits doing the act, but claims that he did not have the requisite state of mind to commit the charged offense." State v. Hernandez, 99 Wn. App. 312, 322, 997 P.2d 923 (1999), review denied, 140 Wn.2d 1015, 5 P.3d 8 (2000). The court found the couch-burning incident was relevant to the issue whether Schloredt acted with malice when he threw the burning gasoline. This was a proper purpose.

"Even when ER 404(b) evidence is admitted for a proper purpose and is relevant to a material issue in the case, the trial court must still weigh the probative value against its prejudicial effect." State v. Lough, 125 Wn.2d 847, 862, 889 P.2d 487 (1995). Unfair prejudice is prejudice that is more likely to arouse an emotional response than a rational decision by the jury and suggests a decision on an improper basis. State v. Cronin, 142 Wn.2d 568, 584, 14 P.3d 752 (2000). Schloredt contends that the trial court erred in concluding that the probative value clearly outweighed the potential prejudice. We disagree.

Schloredt's mental state was the disputed element. Schloredt's trial strategy as revealed in his opening statement was to argue that his actions were driven by irrational thinking, not by malice. Evidence that he had recently set a fire to vex his mother when he was angry with her was probative of the State's

theory that he acted maliciously when he directed the flames at the officers. The court instructed the jury to consider the incident only as evidence of malice. The evidence did not suggest making a decision on an improper basis. We find no abuse of discretion.

<u>Sufficiency of Evidence</u>

Due process requires that the State prove every element of a crime beyond a reasonable doubt. <u>State v. Johnson</u>, 188 Wn.2d 742, 750, 399 P.3d 507 (2017). When a jury instruction is not objected to, it becomes the law of the case. <u>State v. Hickman</u>, 135 Wn.2d 97, 102, 954 P.2d 900 (1998). Thus, the State assumes the burden of proving otherwise unnecessary elements that are included without objection as part of the jury instructions. <u>Hickman</u>, 135 Wn.2d at 102.

Jury instruction 9 set forth the following elements to convict Schloredt:

(1) That on or about September 21, 2015, the defendant caused a fire or explosion;
(2) That the fire or explosion was manifestly dangerous to human life, *including fire fighters*;
(3) That defendant acted knowingly and maliciously; and
(4) That the acts occurred in the State of Washington.

CP 191 (emphasis added). This language closely follows the statutory definition found in RCW 9.A.48.020(1) and the pattern jury instruction. 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 80.01. However, in the pattern jury instruction, "including fire fighters" is enclosed in brackets, indicating that the language does not need to be used in every situation. In this case, the phrase "including fire fighters" may have been unnecessary, but under

Hickman, the State had the burden of proving the second element with that phrase included.

There was evidence that Schloredt's fire could have presented a danger to firefighters if the officers had not quickly extinguished it before firefighters arrived. Still, it is undisputed that no firefighters were involved in putting out the fire. Schloredt contends that because the fire was not manifestly dangerous to any particular firefighter, the evidence was insufficient to prove the second element and the charge must be dismissed with prejudice.

The instruction as given did not require proof that the fire was dangerous to a particular firefighter. The most natural interpretation of the instruction is that the fire must be manifestly dangerous to human beings as opposed to occurring in a setting where no person is nearby. Firefighters as a group are specifically mentioned to dispel any notion that firefighters, who are trained to fight fire, are not endangered by it. We reject Schloredt's challenge to the sufficiency of the evidence.

Affirmed.

Becker, J.

WE CONCUR:

Mann, ACJ.

14