
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  33721-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ZACHARY JOESPH BIGGS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Zachary Biggs appeals his convictions for two counts of rape and his sentence for the two convictions.  We affirm the convictions and the sentence, except that we remand for a determination of legal financial obligations.

## FACTS

This prosecution involves a rape of a wife by her husband.  Zachary and Stacey Biggs were married with children.  In November 2013, Stacey separated from Zachary from concern for her husband's aberrant behavior.  Zachary had recently lied to the Biggs' neighbors and informed them that Zachary, Stacey, and their newborn baby had recently been raped.

In December 2013, Stacey Biggs filed for divorce and procured a protection order to preclude Zachary from contacting her. Zachary then moved to his mother's abode. Stacey occasionally saw Zachary thereafter. Zachary behaved normal and polite during these encounters. Stacey saw Zachary at a gas station, and, to her surprise, he acted gentlemanly. At the filling station, Zachary told Stacey that Zachary's mother had fallen ill and that he consequently had not been eating.

On the afternoon of December 10, 2013, Stacey Biggs delivered her child to Zachary's mother's house. Stacey noted that Zachary's mother presented in fine health, contrary to Zachary's claim, but the home lacked for food. Stacey left but confronted guilt for not bringing spare groceries to Zachary. Stacey returned to her mother-in-law's home bearing groceries. In the meantime, Zachary's mother had departed the house for work.

Stacey Biggs arrived at her mother-in-law's residence at 8:00 p.m. on December 10. As Stacey approached the back door, Zachary opened the door. Zachary inquired of Stacey: "'What are you doing here?'" Report of Proceedings (RP) at 191. Stacey replied: "'Oh, I brought you some food.'" RP at 191. Zachary interjected: "'Are the boys with you?'" RP at 191. Stacey responded: "'No.'" RP at 191. Zachary instantly placed a chokehold on Stacey's neck and threw her to the floor. He pounced on Stacey and yelled in her face: "'Why are you here?'" RP at 191. "'Who sent you?'" RP at

191.  Zachary demanded Stacey enter his room.  Once there, Zachary shut and locked the door.

Zachary Biggs flung Stacey on the bed and repeatedly instructed her to remain silent.  Zachary, with his forearm, applied pressure to Stacey's neck while she lay trapped on the bed.  Zachary held a machete and again interrogated Stacey as to who sent her to his mother's home.  He repeatedly threatened her.  Stacey pleaded with Zachary to let her go home.  In trial testimony, Stacey recalled Zachary menacingly sneering:

> You ain't going home.  I'm going to kill you.  I'll have the kids.  I'll hide your body before this is all over and done with, and, before anybody knows you're missing, I'll be gone and so will you.

RP at 194.

While entrapping Stacey Biggs on the bed, Zachary claimed that individuals in masks had impersonated him.  Zachary pushed and pulled on Stacey's lips, nose, and eyes, and dug into her face.  Zachary declared that he needed to confirm the body he attacked was Stacey.  Zachary also averred that he witnessed Stacey performing oral sex on other men.  Zachary claimed to have been raped three times, and he informed Stacey that she would be dead by night.  Zachary then held a large sharpening stone in his right hand and threatened to bash Stacey's face if she did not cooperate with him.

Zachary Biggs demanded sex from Stacey while holding a machete to her neck.  Zachary grabbed Stacey's hair and forced her face to his groin.  Stacey performed oral sex until nearly retching.  During the sexual assault, Zachary named the women with

3

whom he engaged in sexual conduct during the couple's separation. Zachary released Stacey.

After releasing Stacey from his grip, Zachary Biggs carped to Stacey: "'[y]ou're not doing it like I showed you.'" RP at 202. Zachary regrabbed Stacey by her hair and placed her on the hard floor. Zachary uttered: "'[i]f you don't make love to me like my wife I'm going to stab you.'" RP at 203. Zachary then vaginally raped Stacey on the floor. Zachary reached to retrieve his machete. Stacey pleaded with him that she had been in a car accident and intercourse on a hard floor hurt her back. She cried in pain. After threatening her again, Zachary allowed Stacey to move to the bed.

Stacey Biggs submitted to Zachary again while the two lay on the bed a second time. Stacey did not think she would leave the bedroom alive.

After nearly three hours, Zachary Biggs ended the assault and allowed Stacey to dress. Zachary asked Stacey to drive him to a store so he could purchase a cigar. Stacey complied. At the store, Zachary threatened Stacey with death if she reported his conduct. He then acted as if checking his watch, although not wearing one, and remarked:

> Yeah, about this time tomorrow I'll probably be in jail. And that's all right; I'll do my time. 'Cause when I get out I'll come find you, I'll sneak in the middle of the night and I'll slice your throat. Or I'll come out to your work, wait for you to get off and run your ass and your car into the river and I'll kill you.

RP at 209-10.

On December 11, 2013, Stacey Biggs told coworkers of the rape after her

4

colleagues inquired about her disquietude. Coworkers reported the rape to law enforcement.

PROCEDURE

The State of Washington charged Zachary Biggs with two counts of rape in the first degree and one count of felony violation of a domestic violence court order. The charges alleged that Biggs bore a deadly weapon when committing the crimes against a family or household member.

Dr. Daniel Lord-Flynn of Eastern State Hospital conducted a competency examination of Zachary Biggs and determined that Zachary possessed capacity to understand the court proceedings and participate in his own defense. Dr. Lord-Flynn diagnosed Zachary with a personality disorder. Clerk's Papers (CP) at 63.

Zachary Biggs defended the charges on the ground that Stacey engaged in consensual sex and lied about a rape. Biggs waived his right to a jury trial. The trial court convicted Biggs on all three counts.

During sentencing, the trial court ruled the two counts of rape to be distinct acts of criminal conduct and ordered the sentences for the two counts of rape to run consecutively pursuant to RCW 9.94A.589(1)(b). The trial court distinguished from the assault on the hard floor and the assault later on the bed. According to the trial court, Zachary Biggs, after releasing Stacey from the floor, possessed the opportunity to end his

5

attack, but renewed the assault on the bed. The trial court sentenced Biggs to 309 months' confinement.

At sentencing, the trial court imposed a $500 crime victim assessment, $1,830 in court costs, $750 in fees for a court appointed attorney, a $100 domestic violence assessment, a $100 DNA collection fee, and a $1,000 fine for a total of $4,280. Before assessing the legal financial obligations, the trial court did not inquire about Zachary Biggs' income, assets, and debts.

## LAW AND ANALYSIS

On appeal, Zachary Biggs raises three assignments of error. First, his trial counsel performed ineffectively by failing to raise a defense of diminished capacity. Second, the trial court committed error when refusing to consider the two counts of rape as the same criminal misconduct for purposes of sentencing. Third, the trial court failed to conduct an individualized inquiry as to his ability to pay discretionary legal financial obligations.

### Ineffective Assistance of Counsel

Zachary Biggs first argues that counsel neglectfully failed to raise a diminished capacity defense. Diminished capacity allows a defendant to undermine a specific element of the offense, a culpable mental state, by showing that a given mental disorder had a specific effect by which his ability to entertain that mental state was diminished. *State v. Clark*, 187 Wn.2d 641, 650, 389 P.3d 462 (2017). The defendant must raise the defense of diminished capacity before trial. CrR 4.7(b)(1), (2)(xiv); *State v. Clark*, 187

6

Wn.2d at 651. The defense must obtain a corroborating expert opinion and disclose that evidence to the prosecution pretrial, thereby giving the State a reasonable opportunity to decide whether to obtain its own evaluation. CrR 4.7(b)(1), (b)(2)(viii), (g); *State v. Clark*, 187 Wn.2d at 651. Diminished capacity requires an expert diagnosis of a mental disorder and expert opinion testimony connecting the mental disorder to the defendant's inability to form a culpable mental state in a particular case. *State v. Clark*, 187 Wn.2d at 651.

If specific intent or knowledge is an element of the charged crime, the trier of fact may consider diminished capacity in determining whether the defendant had the capacity to form the requisite mental state. RCW 9A.44.040; *State v. Thomas*, 123 Wn. App. 771, 779, 98 P.3d 1258 (2004). First degree rape contains no mens rea element. *State v. DeRyke*, 149 Wn.2d 906, 913, 73 P.3d 1000 (2003). Therefore, Zachary Biggs did not have diminished capacity available as a defense.

Zachary Biggs argues that *State v. Walden*, 69 Wn. App. 183, 847 P.2d 956 (1993) stands for the proposition that he must still possess a culpable mental state to render his conduct a crime. Nevertheless, *Walden* involves attempted rape and rape in the second degree. John Walden did not raise diminished capacity. *Walden* lacks relevance.

Courts apply a two-pronged test to determine if counsel provided effective assistance: (1) whether counsel performed deficiently, and (2) whether the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 690-92,

104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). If a defendant fails to establish one prong of the test, this court need not address the remaining prong. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

Since diminished capacity does not constitute a defense in a first degree rape charge, Zachary Biggs' trial counsel could not have performed ineffectively. We also note that the expert who examined Biggs never concluded Biggs suffered from diminished capacity.

Same Criminal Conduct

Zachary Biggs does not argue that he could not be convicted of two counts of rape. He contends, however, that his convictions for two counts of rape in the first degree constituted the same criminal conduct for purposes of sentencing.

RCW 9.94A.589(1)(a) and (b) declare:

> (1)(a) Except as provided in (b), (c), or (d) of this subsection, whenever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score: PROVIDED, That if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime. Sentences imposed under this subsection shall be served concurrently. Consecutive sentences may only be imposed under the exceptional sentence provisions of RCW 9.94A.535. "Same criminal conduct," as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim. . . .
> (b) Whenever a person is convicted of two or more serious violent offenses arising from separate and distinct criminal conduct, the standard sentence range for the offense with the highest seriousness level under

> RCW 9.94A.515 shall be determined using the offender's prior convictions and other current convictions that are not serious violent offenses in the offender score and the standard sentence range for other serious violent offenses shall be determined by using an offender score of zero. The standard sentence range for any offenses that are not serious violent offenses shall be determined according to (a) of this subsection. All sentences imposed under this subsection (1)(b) shall be served consecutively to each other and concurrently with sentences imposed under (a) of this subsection.

Since the trial court convicted Zachary Biggs of two violent crimes, he remained subject to consecutive sentences, but, if the two crimes constituted the same criminal conduct, we would lower his offender score.

RCW 9.94A.589(1)(a) demands that the two crimes constitute the same criminal intent, entail the same time and place, and involve the same victim. *State v. Lessley*, 118 Wn.2d 773, 777, 827 P.2d 996 (1992). The defendant must establish that the crimes constitute the same criminal conduct because a finding by the sentencing court of same criminal conduct always favors the defendant. *State v. Johnson*, 180 Wn. App. 92, 104, 320 P.3d 197 (2014). A trial court's determination of what constitutes the same criminal conduct for purposes of calculating an offender score will not be reversed absent an abuse of discretion or misapplication of the law. *State v. Walden*, 69 Wn. App. at 188 (1993).

The two rape charges against Zachary Biggs covered the same victim, time, and place. Zachary Biggs contends that the two crimes also comprised the same continuous criminal intent to rape. Zachary Biggs cites *State v. Tili*, 139 Wn.2d 107, 123, 985 P.2d 365 (1999). According to *State v. Tili*: "[t]he relevant inquiry for the intent prong is to

9

what extent did the criminal intent, when viewed objectively, change from one crime to the next." 139 Wn.2d at 123.

In *State v. Tili*, Fonotaga Tili broke into the victim's home and violently beat her with a metal pan. Tili threw his victim to the floor and anally, vaginally, and digitally raped her. The attack lasted two minutes. The trial court convicted the defendant of three counts of rape and ruled that each count constituted separate criminal conduct for purposes of RCW 9.94A.589. The Supreme Court reversed and held that Tili's intent remained the same throughout the attack. We distinguish Fonotaga Tili's rapes from Zachary Biggs' rapes. Tili attacked his victim for two minutes. Biggs variously controlled his wife with two different weapons for three hours.

The Supreme Court, in *State v. Tili*, distinguished its facts from *State v. Grantham*, 84 Wn. App. 854, 932 P.2d 657 (1997), wherein this court ruled a rape to not be the same criminal conduct. The *Tili* court reasoned:

> [t]he evidence in *Grantham* supported a conclusion that the criminal episode had ended with the first rape: "Grantham, upon completing the act of forced anal intercourse, had the time and opportunity to pause, reflect, and either cease his criminal activity or proceed to commit a further criminal act." . . .
> In contrast to the facts in *Grantham*, Tili's three penetrations of L.M. were continuous, uninterrupted, and committed within a much closer time frame–approximately two minutes. This extremely short time frame, coupled with Tili's unchanging pattern of conduct, objectively viewed, renders it unlikely that Tili formed an independent criminal intent between each separate penetration.

*State v. Tili*, 139 Wn.2d at 123-24 (citing *Grantham*, 84 Wn. App. at 856-57).

10

Zachary Biggs' rapes parallel the misconduct of James Grantham, not the misbehavior of Fonotaga Tili. Grantham and Biggs paused the attacks and gained an opportunity to reflect and either cease criminal activity or proceed. At the onset of his attack, Zachary physically forced Stacey to orally copulate until Stacey nearly vomited. Zachary released her and, after pausing, directed Stacey to the floor by threatening to kill her. He placed the machete on the bed. When Stacey lay on the floor, Zachary raped her vaginally. When Stacey complained of back pain, Zachary released her once again. He paused and could have ended the assault. He directed Stacey to the bed where he raped her again. The State could have charged and convicted Biggs of three separate criminal acts of rape. The trial court did not abuse its discretion in finding the two counts of rape to constitute dissimilar criminal conduct.

## Legal Financial Obligations

The trial court imposed a $500 crime victim assessment, $1,830 in court costs, $750 in fees for a court appointed attorney, a $100 domestic violence assessment, a $100 DNA collection fee, and a $1,000 fine for a total of $4,280. $3,580 of this sum constitutes discretionary legal financial obligations. Zachary Biggs claims the trial court failed to consider his ability to pay before imposing legal financial obligations. He did not object to the imposition of any of the obligations at sentencing.

RAP 2.5 allows this court to refuse review of any claim of error not raised in the trial court. The Supreme Court, however, in *State v. Blazina*, 182 Wn.2d 827, 832, 344 P.3d 680 (2015), bestowed discretion on this court to address the imposition of discretionary legal financial obligations despite no objection before the trial court.

The record must reflect that the trial court made the individualized inquiry into the defendant's current and future ability to pay. *State v. Blazina*, 182 Wn.2d at 838. This inquiry should address a defendant's incarceration, job status, debts, or other indicators of ability to pay. *State v. Malone*, 193 Wn. App. 762, 766, 376 P.3d 443 (2016). The State concedes that the sentencing court did not inquire into Zachary Biggs' financial situation prior to imposition of obligations. For this reason and because of the amount of the obligations imposed, we remand to the trial court to reconsider assessment of discretionary legal financial obligations.

## Statement of Additional Grounds

Zachary Biggs filed additional grounds for this court's review and contends that the trial court violated his right to a jury trial. He asserts that he never agreed to a bench trial and his counsel never discussed with him the signing of waiver of a jury trial. The record shows Biggs affirmatively waived his right to a jury trial. The record does not intimate that his counsel failed to properly advise him before waiving the right.

No. 33721-9-III
*State v. Biggs*

CONCLUSION

Zachary Biggs' counsel did not ineffectively represent Biggs. We affirm Biggs' convictions for rape. We also affirm his sentence for two separate acts of rape, but remand for reassessment of legal financial obligations.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____                    _____
Siddoway, J.                                         Pennell, A.C.J.