## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54566-7-II |
| Respondent, | |
| v. | |
| JUSTIN ROBERT ROOSMA, | PUBLISHED OPINION |
| Appellant. | |

GLASGOW, A.C.J.—Justin Robert Roosma was charged with felony harassment after his girlfriend, Jennifer Dettwiler,[1] reported that he sent her a text message threatening to kill her. Before trial, Roosma moved to exclude a series of text messages including the threatening text, arguing that the messages were inadmissible under ER 901 because they could not be authenticated. The State responded with an offer of proof, describing the authentication testimony it planned to offer. The trial court denied Roosma's motion in limine at that time. At trial, the State offered authentication testimony through Dettwiler. Roosma's counsel said they had no objection to admission of the text messages at trial, and the court admitted the messages.

Roosma appeals his conviction, contending that the State failed to properly authenticate the text messages and that the trial court abused its discretion by admitting them. The State argues that the issue is not properly preserved because Roosma did not object to the admission of the

---

[1] Jennifer Dettwiler also went by Jennifer Wiseman and Jennifer Roosma at various times. Jennifer's maiden name, Dettwiler, was the last name she used at the time of the trial. For consistency, we use Dettwiler throughout.

messages at trial. We agree with the State that Roosma did not preserve his objection to authenticity of the text messages. We affirm.

FACTS

Roosma and Dettwiler briefly dated in 2010, ended their romantic relationship, and married other people. Roosma and Dettwiler continued to cross paths, however, because they lived in the same neighborhood and had children of similar ages.

Roosma and Dettwiler began dating again in 2019. Roosma controlled where Dettwiler went and monitored her interactions with other people, especially men. Roosma looked through Dettwiler's phone daily, used an application on her phone to track her location, and engaged in other controlling behaviors. Roosma physically assaulted Dettwiler multiple times during their relationship in 2019, including one incident when Roosma grabbed and squeezed Dettwiler's face hard enough to break one of her teeth.

On December 12, 2019, Dettwiler went to her adult daughter's apartment to visit and babysit her grandchildren. Roosma was mad because Dettwiler was spending time with other people. Even though Roosma could track Dettwiler's location, he called to confirm that Dettwiler was at her daughter's apartment. He then video called Dettwiler and made her display her surroundings because he did not believe her. According to Dettwiler, "[E]ven [after the video call] he still didn't believe me. He thought I was meeting up with somebody or doing something that was shady or deceiving." 3 Verbatim Report of Proceedings (VRP) at 274. Dettwiler recalled that Roosma video called her "probably 15 [or] 20 more times and called [her on the phone] probably 20 [or] 25 more times at least" that afternoon and evening. *Id.*

Roosma also sent Dettwiler numerous text messages while she was at her daughter's apartment. At trial, Dettwiler said she knew the messages were from Roosma because there was an "M" next to the incoming messages. The "M" appeared next to Roosma's messages because Dettwiler had saved his contact information in her phone under the nickname "My Forever." *Id.* at 276. At some point that evening, Dettwiler blocked Roosma's phone number because "he was messaging me so much and being really rude. But he just downloaded other phone numbers [using a cell phone application] and just messaged me from all different kinds of phone numbers." *Id.* at 275.

Prior to blocking Roosma's number, Dettwiler received a series of text messages from Roosma that she later photographed. One of the messages said, "I'm f\*\*\*ing going to kill you b\*\*ch." *Id.* at 281; Pl.'s Trial Ex. 3.

Dettwiler took the threat seriously and feared for her life. However, Dettwiler was also scared to contact the police right away because she did not "want to be on the receiving end of [Roosma's] anger." 3 VRP at 281. Dettwiler instead tried to de-escalate the situation by calling Roosma and "reassuring him that I wasn't cheating on him and that I really was only just visiting my grandkids." *Id.* at 282. Roosma continued to call Dettwiler that night, alternating between being angry and apologetic.

Using her daughter's phone, Dettwiler photographed several of the texts she received, including the accusation that she was having sex with another man and the message threatening her life, which appeared in succession. At trial, Dettwiler explained, "I didn't want to screenshot [them] on my phone because then he would see it and want to know why I did that." *Id.* at 276. Dettwiler also worried that Roosma would delete any screenshots from her phone if he found them.

Dettwiler spent the night at her daughter's apartment. Dettwiler turned her phone off during the night, but in the morning she saw that Roosma had called and texted her throughout the night, sending messages that continued to alternate between angry outbursts and apologies. Dettwiler canceled her shared phone plan with Roosma and bought a new phone.

Dettwiler then told Roosma over the phone that she wanted to end their relationship. Roosma responded by telling Dettwiler to choose between him and her children and that if she left him, "there was nobody on earth that would be able to help [her] and that he would never stop." *Id.* at 288. This made Dettwiler fear for her life, so two days after receiving the original threatening text message, Dettwiler contacted law enforcement. Deputy Robert Langlow of the Pierce County Sheriff's Department responded to Dettwiler's daughter's apartment and interviewed Dettwiler. Langlow asked Dettwiler if she believed Roosma would actually attempt to kill her. Dettwiler responded by crying and saying, "[Y]es." *Id.* at 358. Dettwiler showed Langlow a photo of the text messages Roosma had sent her. The photo was on her daughter's phone.

Langlow and other officers then went to the apartment Dettwiler and Roosma shared and arrested Roosma. Roosma was charged with felony harassment under the threat to kill prong. RCW 9A.46.020(1)(a)(i), (b), (2)(b)(ii).

Later, Deputy Emily Holznagel, a domestic violence investigator with the Pierce County Sheriff's Department, met with Dettwiler. Dettwiler printed out the photos of the text messages and gave the printout to Holznagel. Dettwiler also showed Holznagel her daughter's phone, which contained the photos of the text messages.

Before trial, Roosma orally moved to exclude the text messages that Dettwiler photographed on her daughter's phone, including the one threatening Dettwiler's life, arguing they

could not be authenticated and were therefore inadmissible. Defense counsel argued that the decision about their admissibility should be made before opening arguments.

The State responded with a brief offer of proof describing the anticipated testimony. The State explained that Dettwiler would authenticate the messages by testifying how she knew they were from Roosma, explaining that the threatening text was part of a longer message thread in which Roosma accused her of cheating on him, and noting that Roosma "further elaborated" on the threat in a later phone call. 1 VRP at 23.

Roosma also made a best evidence objection because the copies of the text messages were printouts of pictures taken of the text messages. The trial court concluded that the best evidence rule did not warrant exclusion and declined to exclude the text messages on this basis. Roosma does not raise the best evidence rule on appeal.

The defense reiterated concerns about the threatening message being faked or from a spoofed phone number and asked the court to "demand that that message be authenticated prior to the State's being able to reference it in opening and moving forward." *Id.* at 25. The trial court ruled that it would not exclude the threatening message at that time, explaining,

> I think all of the issues that you have raised are issues that go to the weight, not the admissibility. In terms of the text message, the offer of proof indicates that [Dettwiler is] going to testify that the number that the text was received from is a number that was associated with Mr. Roosma, in addition, that there was a follow-up telephone call. I presume [Dettwiler is] going to testify that she recognized the voice and it was in fact Mr. Roosma and that it came from the same phone number. To the extent you want to attack her credibility or the credibility of the text message, you can absolutely do that on cross-examination.
>
> . . . .

5

> . . . *[O]bviously authentication is always an issue at trial*, but based on the offer of proof that was made by the State, I'm not going to suppress the text message *at this time*.

*Id.* at 25-26 (emphasis added). The trial court did not further instruct Roosma to object to the admission of the text messages at trial.

On direct examination, Dettwiler testified to the facts described above. The State showed Dettwiler an exhibit that consisted of a series of text messages that included the threatening text and asked her a series of authentication questions before seeking to admit the exhibit or have Dettwiler testify about its contents. Dettwiler identified the exhibit as a printout of photographs she had taken of some of the text messages Roosma sent her on December 12, 2019. The following exchange then occurred:

> [State]　　　Is there some kind of communication on that exhibit?
>
> [Dettwiler]　　Yes, messages from Justin [Roosma].
>
> [State]　　　And how do you know it's from Mr. Roosma?
>
> [Dettwiler]　　Because I never got messages from any other man but him, and my kids and I know that this is my phone because I had him in my phone as My Forever.
>
> [State]　　　And is that why there's an M next to the messages?
>
> [Dettwiler]　　Yes.
>
> [State]　　　And did that come from a phone number that you know is Mr. Roosma?
>
> [Dettwiler]　　Yes.
>
> [State]　　　And that's why it's in your phone as My Forever; is that right?

[Dettwiler]     Yes.

3 VRP at 275-76.

Dettwiler further explained that she took photos of the texts using her daughter's phone and then gave a printout of the photographs to law enforcement. Dettwiler confirmed that the exhibit contained "a fair and accurate display of the text messages [she] received" and that they had not been altered in any way. *Id.* at 277.

The State offered the exhibit into evidence. Roosma's counsel responded that the defense had "[n]o objection," and the trial court admitted the text message exhibit. *Id.* at 278. Dettwiler then testified about the content of the messages, and the exhibit was published for the jury.

The jury convicted Roosma of felony harassment based on a threat to kill. Roosma appeals his conviction.

ANALYSIS

The State contends that this court should not review the merits of Roosma's appeal because the trial court's pretrial decision depended on the actual testimony at trial. Defense counsel expressly stated, "No objection" when the State moved to admit the text messages during trial and so did not preserve for appeal any challenge to their admissibility. *Id.* We agree.

RAP 2.5(a) gives this court discretion to refuse to review a claim of error not preserved in the trial court with limited exceptions not at issue here. *See also State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985). And ER 103(a)(1) provides that a party cannot appeal an evidentiary ruling unless that party made a "timely objection or motion to strike" at trial "stating the specific ground of [the] objection" if not apparent from context.

The Washington Supreme Court has explained that "the purpose of a motion in limine is to avoid the requirement that counsel object to contested evidence when it is offered during trial," so a standing objection arises "'[u]nless the trial court indicates that further objections at trial are required when making its ruling.'" *State v. Powell*, 126 Wn.2d 244, 256, 893 P.2d 615 (1995) (alteration in original) (quoting *State v. Koloske*, 100 Wn.2d 889, 895, 676 P.2d 456 (1984), *overruled on other grounds by State v. Brown*, 111 Wn.2d 124, 761 P.2d 588 (1988)). A standing objection does not arise, however, where the trial judge reserves the ruling or "'makes only a tentative ruling subject to evidence developed at trial.'" *Id.* (quoting *Koloske*, 100 Wn.2d at 896). When a trial court makes a ruling "subject to [the] evidence [to be] developed at trial, the parties are under a duty to raise the issue at the appropriate time with proper objections at trial." *Koloske*, 100 Wn.2d at 896. The Supreme Court has held that the parties "are obligated to insure that a record of the ruling is made for appeal purposes." *Id.* "'[W]hen a ruling on a motion in limine is tentative, any error in admitting or excluding evidence is waived unless the trial court is given an opportunity to reconsider its ruling'" when the evidence is submitted at trial. *Powell*, 126 Wn.2d at 257 (alteration in original) (quoting *State v. Carlson*, 61 Wn. App. 865, 875, 812 P.2d 536 (1991)).

In *Powell*, some of the trial court's pretrial rulings were final and some were not. *Id.* The Supreme Court held that the trial court's rulings were final where the judge "did not indicate that any further objections would be necessary during trial" even though it made some "comments to the effect that its rulings were subject to revision." *Id.* Other factors supporting finality included that the trial court commented at the end of the motion in limine hearing admonishing the parties to comply with its rulings and that "the majority of the judge's rulings were expressed in language

8

that was neither tentative [n]or equivocal." *Id.* But the *Powell* court held that the trial court reserved ruling with regard to one issue where it "indicat[ed] that defense counsel needed to provide further support for exclusion." *Id.*

Recently, in *State v. Dillon*, Division One relied on a rather expansive interpretation of *Powell* to conclude that a pretrial ruling was final even where the trial court said it was denying the motion "'at this point in time.'" 12 Wn. App. 2d 133, 147, 456 P.3d 1199, *review denied*, 195 Wn.2d 1022 (2020). The *Dillon* court opined that "[a] trial court's ruling on a motion in limine is final, unless the court indicates that further objections are required during trial." *Id.* (underscore omitted).

The defendant in *Dillon* brought a motion in limine to exclude statements that he contended were inadmissible because their probative value did not outweigh the risk of unfair prejudice. *Id.* at 146. The trial court ruled, "'This may be subject to further action and objection as testimony actually is taken. But at this point I am respectfully going to deny the defense motion.'" *Id.* at 147. The defendant did not object to the statements during the trial but challenged them on appeal. *See id.* at 146. Division One concluded that the issue was preserved for appeal because "[t]he trial court did not indicate that further objections were necessary during testimony to preserve Dillon's objection." *Id.* at 147.

We respectfully decline to follow *Dillon* and instead hold that under *Powell*, a pretrial ruling can be considered tentative even if the trial court did not expressly require objection to the admission of evidence at trial. This is more consistent with the plain language of prior Supreme Court decisions, including *Koloske* and *Powell*. Neither case requires the trial court to expressly invite a later objection for this court to conclude that the ruling was conditional or tentative.

9

Here, the trial court made a tentative pretrial ruling. The trial court stated that it was "not going to suppress the text message *at this time*." 1 VRP at 26 (emphasis added). And the trial court signaled that the defense should object to authentication at trial by stating, "[O]bviously authentication is always an issue at trial." *Id.* Further, Dettwiler did not provide testimony to support the State's offer of proof, so the trial court's tentative ruling at the motion in limine stage was based only on the prosecuting attorney's summary of Dettwiler's anticipated testimony. Any final ruling would have to be based on the testimony actually presented at trial. Finally, defense counsel expressly said, "No objection" when the State offered the text messages at trial, effectively withdrawing the defense's previous objection. 3 VRP at 278. And defense counsel failed to further clarify whether they intended to preserve any earlier objections.[2]

In sum, even though the trial court did not expressly invite further objections at trial, it is apparent from context that the trial court's ruling on Roosma's motion in limine was not final. *See Powell*, 126 Wn.2d at 527. Roosma would have needed to object to the admission of the text messages during Dettwiler's testimony to preserve this issue for appeal, but he did not do so and,

---

[2] Although we agree with the State that Roosma did not preserve his challenge to the admissibility of the text messages, we reject the State's argument that Roosma's motion in limine only addressed whether the State could mention the text messages in its opening statement. Roosma asked the trial court to determine whether the text messages could be authenticated under ER 901 "prior to the State's . . . opening *and moving forward*."1 VRP at 25 (emphasis added). The trial court specifically noted that "all of the issues that [the defense] raised are issues that go to the weight, not the admissibility" and instructed Roosma that he could explore the authenticity of the messages when cross-examining the State's witnesses. *Id.* The trial court's ruling, although tentative, thus contemplated the admissibility of the text messages as substantive evidence, not just whether the State could reference them in its opening statement.

No. 54566-7-II

instead, expressly said, "No objection." 3 VRP at 278. We hold that Roosma waived his challenge to the admissibility of the text messages. We affirm.

Glasgow, A.C.J.

We concur:

Cruser, J.

Veljacic, J.