IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 86539-1-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| TRISTAN TRAN TRINH, | |
| Appellant. | |

HAZELRIGG, C.J. — Tristan Trinh appeals from a conviction for murder in the first degree after a jury trial. Trinh avers that he received ineffective assistance of counsel, the trial court erred and infringed on his right to present a defense by excluding evidence, the prosecutor engaged in misconduct, and cumulative error prevented him from receiving a fair trial. Trinh also presents a number of other purported errors in a statement of additional grounds for review. Because none of Trinh's contentions establish entitlement to relief, we affirm.

FACTS

Tristan Trinh was charged with murder in the first degree by premeditation with a special aggravating circumstance and separate firearm sentencing enhancement based on an altercation he had with Roy Ashmore on August 6, 2022. At the time, Tristan Trinh lived with his grandmother, Pamela Norton, in Startup, Washington. Norton's property contained several buildings, including one

that served as both her living space and antique shop and a separate outbuilding that had been converted into a residence for Trinh. The day before the incident at issue here, Norton and Trinh had argued over damage she believed Trinh had caused to her truck and home and she called the police in an attempt to remove him from the property. Norton later stated that law enforcement declined to do so. As a result, she called her friend, Ashmore, the next morning and relayed the events of the previous night, noting that she "was in the process of filling out a restraining order online." Norton asked Ashmore if they could meet up and if she could "stay at his place for a couple days." Norton later testified that Ashmore offered to come to the home.

Trinh and Norton both testified at the resulting trial and provided similar accounts of how events unfolded. When Ashmore arrived at Norton's property, he repeatedly called out to Trinh, "Where's your grandma?" Norton later described Ashmore's tone of voice at this time as "frantic." Ashmore and Trinh struggled at the door to Norton's residence; Ashmore was trying to gain entry, and Trinh was trying to prevent it. The altercation escalated and became physical, but Trinh walked away after the two separated.

After the initial confrontation at Norton's shop, Trinh retrieved his firearm from the safe where he stored it, went back outside, and waited for Ashmore to leave the property. Norton, Ashmore, and Ashmore's son, T,[1] then went outside because their friend David Everist had arrived. Everist later testified that after the group had discussed the situation back near the vehicles, Ashmore approached

---

[1] Because he was a minor both at the time of the incident and his testimony at trial, we refer to Ashmore's son by his first initial.

Trinh who was by then standing behind a dumpster towards the rear of the property. Everist asserted that Ashmore was simply attempting once again to convince Trinh to leave.

Trinh testified that as Ashmore approached, Trinh "saw him place on the ground to his right[,] a brown firearm holster" but also stated he was not certain that the item he saw was actually a holster. Trinh further explained, "I also visibly saw him with something silver in his hand, or like chrome." Trinh was again uncertain about what exactly that other silver or chrome object was but "thought it was a firearm." Trinh testified that Ashmore continued toward him and Trinh gave several verbal warnings that Ashmore disregarded. Soon thereafter, Ashmore turned and began to walk away, and Trinh said, at that point, he believed Ashmore was going to shoot him. Trinh asserted that Ashmore had turned back toward him after walking away and that is when Trinh fired several times, including once at Ashmore's head after he had fallen to the ground due to the initial shots. Trinh fled after removing the magazine from his pistol, and Everist pursued him. Everist said that Trinh placed the gun on the ground and walked with him until they ultimately returned to Ashmore. Deputies from the Snohomish County Sheriff's Office (SCSO) responded to Norton's 911 call and placed Trinh under arrest. Ashmore died at the scene.

On August 26, the State filed an information that alleged Trinh had committed murder in the first degree by premeditation and included a firearm enhancement. Trinh's counsel sought and was granted an order for a competency

evaluation in February 2023.[2] The state evaluator conducted two interviews with Trinh, on March 6 and March 15, with defense counsel present for each.[3] The evaluator issued their report on March 20 and opined that Trinh was competent to stand trial because he had "the capacity to understand the nature of the proceedings against him and the capacity to assist in his defense" but recommended further assessment to rule out a diagnosis of "Cannabis Use Disorder." On March 29, based on the report, the trial judge entered an order finding that Trinh was competent because there had "not been a showing by a preponderance of the evidence" that the statutory standards regarding lack of competency to stand trial were met.

On September 14, the State filed an amended information to include as an aggravating factor an allegation that "the crime involved a destructive and foreseeable impact on persons other that [sic] the victim, as provided by RCW 9.94A.535(3)(r)," based on the presence of Ashmore's minor son, T, at the scene of the shooting. In January 2024, Trinh filed his trial brief and motions in limine that indicated he would pursue a self-defense theory for the case. Trinh sought the admission of evidence regarding Ashmore's pistol that law enforcement had recovered from his vehicle after the incident. Trinh's contention was that "the doctrine of res gestae renders the evidence that Mr. Ashmore brought a pistol with him to the scene incredibly relevant" and admission of evidence regarding the presence of the pistol in the truck was necessary to tell a complete version of

---

[2] The court issued a second order a week after the first that extended the period of time for evaluation based on the unavailability of Trinh's attorneys.

[3] The defense attorney present for the March 6 evaluation was not Trinh's counsel of record, but Trinh's assigned public defender was present for the March 15 evaluation.

events.   Roughly a week later, the State filed its own trial memorandum and motions in limine, which included a motion to "exclude all argument and evidence that a holstered pistol was located in Roy Ashmore's" vehicle because "there [wa]s no evidence [Trinh] had any knowledge of the pistol located in Mr. Ashmore's truck."  The State argued that this meant the pistol could not have had an "impact on [Trinh's] state of mind when he killed Mr. Ashmore" and the evidence "would be speculative and misleading to the jury" in the context of a self-defense case.  The judge entered a tentative ruling excluding evidence related to the pistol found in the pickup but indicated that it could be revisited in the event that Trinh chose to testify.

The case proceeded to trial in November 2023 but was ultimately delayed because misconduct by members of the venire resulted in the trial judge striking the initial jury panel, bringing in a new one, and conducting voir dire anew.  This resulted in further scheduling complications; the case was then reassigned to a different judge and trial again commenced in late January 2024.  The jury heard from law enforcement witnesses, Norton, others who had been present at the scene, and Trinh himself.  The jury returned a guilty verdict on the charge of murder in the first degree with a special verdict that Trinh was armed with a firearm at the time of the offense.  However, it found that the State had failed to prove the aggravator beyond a reasonable doubt.  On March 14, the trial judge sentenced Trinh to 240 months in prison and an additional 60 months for the mandatory firearm enhancement, to run consecutively, for a total term of confinement of 300

months, followed by 36 months on community custody and a requirement to register as a felony firearm offender upon his release from incarceration.

Trinh timely appealed.

ANALYSIS

I.      Failure To Pursue Mental Health Defenses as Ineffective Assistance of Counsel

In his opening brief, Trinh asserts that "there is no reasonable trial strategy in failing to assert a mental health defense" because such a defense would have allowed his trial counsel "to argue Trinh's mental state either negated the mens rea required for murder, and/or his mental condition prevented him from appreciating the nature, quality, or wrongfulness of his actions." For this reason, he contends trial counsel was constitutionally ineffective. In response, the State avers that the decision of Trinh's trial counsel not to pursue a mental health defense was reasonable because it conflicted with the theory of the defense that was ultimately presented to the jury and counsel was not ineffective for making this tactical decision. We agree with the State.

"The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective assistance of counsel." *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017); U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. We review a claim of ineffective assistance of counsel (IAC) de novo. *State v. Jones*, 183 Wn.2d 327, 338, 352 P.3d 776 (2015). To prevail on an IAC claim, a defendant must show deficient performance, meaning "counsel's representation fell below an objective standard

- 6 -

of reasonableness," and prejudice, which is established by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *see also State v. McFarland*, 127 Wn.2d 322, 334, 899 P.2d 1251 (1995). "Competency of counsel is determined based upon the entire record" on appeal. *McFarland*, 127 Wn.2d 335. A defendant appellant carries the burden to establish both elements and must overcome "a strong presumption that counsel's performance was reasonable." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." *Id.* at 863.

Mental health defenses, both insanity under RCW 9A.12.010 and diminished capacity as established by case law, are generally available to accused persons provided that certain evidentiary standards and requirements are satisfied. *See State v. Ellis*, 136 Wn.2d 498, 521, 963 P.2d 843 (1998) (regarding diminished capacity). The defense of insanity requires that the defendant prove by a preponderance of the evidence that they are unable to understand the nature and quality of their charged conduct. RCW 9A.12.010; 10.77.505.[4] Expert testimony is essential to this undertaking. *See, e.g., State v. Hamlet*, 133 Wn.2d 314, 322, 944 P.2d 1026 (1997); *State v. Thompson*, 19 Wn. App. 2d 727, 731-35, 498 P.3d 40 (2021). Diminished capacity negates the mental state element of the

---

[4] Under older versions of the statute, if the accused "pleaded not guilty by reason of insanity," the court or a party had to "appoint or request the secretary to designate at least two qualified experts . . . to examine and report upon the mental condition of the defendant," and this is reflected in older case law. However, the two expert requirement was removed in a subsequent amendment to the statute. *See* former 10.77.060 (2004), *amended by* LAWS OF 2012, ch. 256, § 3.

charge(s), but it is not an affirmative defense and requires expert testimony in order to establish that the accused has a mental health condition that prevents them from forming that mental state. *State v. Clark*, 187 Wn.2d 641, 650-51, 389 P.3d 462 (2017); *State v. Stumpf*, 64 Wn. App. 522, 525, 827 P.2d 294 (1992).

In briefing, Trinh quotes *State v. Tilton,* 149 Wn.2d 775, 784, 72 P.3d 735 (2003), in his assertion that our State "Supreme Court has held '[f]ailure of defense counsel to present a diminished capacity defense where the facts support such a defense has been held to satisfy both prongs of the *Strickland* test.'" (Alteration in original.) He also offers *State v. Fedoruk*, 184 Wn. App. 866, 339 P.3d 233 (2014), and an unpublished opinion from Division Two of this court, *In re Personal Restraint of Durgeloh*,[5] as further examples of IAC on this basis. However, here, Trinh's attorney pursued two separate pretrial mental health evaluations for him which plainly establishes that counsel was attentive to the *potential* for such a defense, even if it was not ultimately pursued at trial. Trinh conceded this procedural fact at oral argument before this court,[6] and it, alone, distinguishes Trinh's case from those he cites where trial counsel failed to properly investigate the possibility of a mental health defense despite evidence that suggested its viability. *See Tilton*, 149 Wn.2d at 784-85; *Fedoruk*, 184 Wn. App. at 880-85; *Durgeloh*, slip op. at 8.

---

[5] No. 47733-5-II, slip op. (Wash. Ct. App. Sept. 13, 2016) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2047733-5-II%20Unpublished%20Opinion.pdf.
Pursuant to GR 14.1, we may cite to unpublished opinions as necessary for well-reasoned opinions. *Durgeloh* is considered here solely because Trinh offered it in briefing as support for this assignment of error.

[6] Wash. Ct. of Appeals oral arg., *State v. Trinh*, No. 86539-1-I (Nov. 4, 2025), at 1 min., 15 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2025111095/.

The March 20, 2023 initial competency report, issued after the March 6 and 15 interviews of Trinh by the evaluator, a state psychologist, mentions only a possible diagnosis of cannabis use disorder, presented as a "Rule Out" diagnosis, and concluded that "Trinh was not evidencing or reporting acute psychiatric symptoms that would be expected to impair his competency related capacities" at the time of the evaluation. Despite this conclusion by the evaluator, defense counsel sought further insight into Trinh's mental health by way of a subsequent forensic psychological evaluation by forensic psychologist Dr. Michael Stanfill[7] that culminated with the issuance of a final report in December 2023. The Stanfill evaluation diagnosed Trinh with "Unspecified Schizophrenia and Other Psychotic Disorder versus Schizotypal Personality Disorder" and "Cannabis Use Disorder, Severe" and contained the opinion that "Trinh was experiencing significant mental health symptoms at the time of the alleged incidents that directly caused and impacted his behavior."

Trinh's briefing on this issue focuses almost exclusively on this second evaluation, rather than the entirety of the information available to trial counsel at the time the decision at the heart of this assignment of error occurred. It is noteworthy to this panel that the Stanfill evaluation was plainly written in support of an exceptional sentence below the standard range based on mitigating information related to Trinh's mental health but, conspicuously, does *not* contain any opinion that Trinh was unable to appreciate the consequences of his behaviors or otherwise exhibited a diminished capacity or inability to form the requisite mens

---

[7] Stanfill was assisted in his forensic psychological evaluation of Trinh, and the resulting report was cosigned, by postdoctoral fellow Jacie Brown, PhD.

rea. This is definitively established by the final section of the report, titled "Recommendations," which begins with the following framing:

> Per RCW 9.94A.535 (Departures from the guidelines [under the Sentencing Reform Act of 1981[8]]), the [c]ourt "may impose an exceptional sentence below the standard range if it finds that mitigating circumstances are established by a preponderance of the evidence" ([RCW] 9.94A.535(1)). One's mental illness could be considered within this context especially if "the defendant's capacity to appreciate the wrongfulness of his or her conduct, or to conform his or her conduct to the requirements of the law, was significantly impaired" ([RCW] 9.94A.535(1)(e)).

When asked at oral argument before this court which portion of the Stanfill report contained the expert opinion required under the relevant authority that Trinh was unable to form the necessary mental state, Trinh's appellate counsel emphasized excerpts from the three sentences that follow in that same paragraph.[9] The remainder of the opening paragraph of the "Recommendations" section of the report, after the citations to the applicable statutory bases for an exceptional sentence, reads as follows:

> In this case, and as specified above, Mr. Trinh was experiencing significant mental health symptoms at the time of the alleged incidents that directly caused and impacted his behavior. These symptoms were implicated in his paranoia and distrust of others, misreading social situations and cues, and engagement in odd and atypical behavior. As such, there was evidence that he did not fully appreciate his actions in a reality-based manner and struggled to conform his behavior to the requirements of the law as a direct result of his associated mental illness.

Critically, that paragraph concludes with, "[t]herefore, I recommend that the [c]ourt *consider this information in determining an outcome* for Mr. Trinh's case." (Emphasis added.)

---

[8] Ch. 9.94A RCW.
[9] Wash. Ct. of Appeals oral arg., *supra*, at 2 min., 20 sec.

A.    Diminished Capacity

"To maintain a diminished capacity defense, a defendant must produce expert testimony demonstrating that a mental disorder, not amounting to insanity, impaired the defendant's ability to form the culpable mental state to commit the crime charged." *State v. Atsbeha*, 142 Wn.2d 904, 914, 16 P.3d 626 (2001).  To pursue a defense of diminished capacity at trial, Trinh would have assumed the burden of proof on that point.  Assuming that Stanfill was qualified to testify as such an expert at trial, the opinion set out in the December 2023 report based on the forensic evaluation simply does not meet the standard for a diminished capacity defense as it lacks any opinion on Trinh's ability to form the "culpable mental state" at the time of the shooting.  It simply asserts that "*there was evidence* that [Trinh] did not fully appreciate his actions" and "struggled to conform his behavior to the requirements of the law," but fails to acknowledge the relevant mental state for the charged crime, much less opine that this evidence of Trinh's mental health struggles could have impaired his ability to form that mental state on the date of the shooting.  (Emphasis added.)  As noted by the State at oral argument before this court and in briefing, Stanfill's report is silent on the question of whether Trinh had the ability to plan, prepare, or engage in any other process that could constitute premeditation on the date of the incident at issue here.[10]

On this basis alone, defense counsel's strategic decision not to pursue such a defense was reasonable; despite his efforts to obtain a qualified expert to conduct a forensic psychiatric evaluation, that expert did not provide an opinion

---

[10] Wash. Ct. of Appeals oral arg., *supra*, 19 min., 29 sec.

that satisfied the requirements for a diminished capacity defense. Close review of the portion of Stanfill's report that sets out the "Sources of Information Considered" establishes that in addition to reviewing various case documents like the information and probable cause affidavit, discovery and various notes from defense investigation interviews, and school and medical records, Stanfill conducted a collateral interview with Trinh's father in May 2023. Highly relevant here, Stanfill also reported that he conducted a "[c]linical interview and mental status examination of Mr. Trinh on 5/22/2023 for approximately one hour and 20 minutes in length" and again on "10/04/2023 for approximately 55 minutes in length." Further, Stanfill's report contains a section titled "Advisement of Rights" and explains that Trinh was able to recall the rights that Stanfill had described to him prior to the start of the evaluation. Stanfill stated, "Trinh acknowledged that I would share results from my assessment with his attorney. *If his attorney decided to have me write a report, that report would be shared with the court and prosecutor in his case*." (Emphasis added.) This is likely a reference to the discovery obligations of both the State and the defense set out in CrR 4.7 and the requirement under RCW 10.77.405(1)(a)(i) that the evaluator provide a copy of their report and recommendation to the court.

On appeal, Trinh properly notes that our Supreme Court in *Atsbeha* explained the "opinion concerning a defendant's mental disorder must reasonably relate to impairment of the ability to form the culpable mental state to commit the crime charged." 142 Wn.2d at 921. He further offers this court's opinion in *State v. Mitchell* for the proposition that under the standard articulated by the Supreme

Court in *State v. Greene*, 139 Wn.2d 64, 984 P.2d 1024 (1999), "it is not necessary that the expert be able to state an opinion that the mental disorder actually did produce the asserted impairment at the time in question—only that it could have, and if so, how that disorder operates." 102 Wn. App. 21, 27, 997 P.2d 373 (2000). Trinh's argument is flawed because it rests on a portion of *Greene* cited in *Mitchell* that analyzes the propriety of the qualifying expert opinion based on scientific principles and the appropriateness of the forensic application of those principles, not the helpfulness of the expert's opinion in the jury's assessment of the mens rea of the accused person. See *Greene*, 139 Wn.2d at 74. Perhaps more critically, the *Atsbeha* opinion was issued the year after *Mitchell*, directly addressed the evidentiary standards for a diminished capacity defense, and is binding as controlling authority from our state Supreme Court. Specifically, *Atsbeha* holds,

> It is not enough that a defendant may be diagnosed as suffering from a particular mental disorder. The diagnosis must, under the facts of the case, be capable of forensic application in order to help the trier of fact assess the defendant's mental state at the time of the crime. The opinion concerning a defendant's mental disorder must reasonably relate to the impairment of the ability to form the culpable mental state to commit the crime charged.

142 Wn.2d at 921. Under the plain language of this holding, Stanfill's opinion as set out in his December 2023 report could not support a diminished capacity defense.

Further, it is telling that the Stanfill report was not issued closer in time to his May 2023 interviews with Trinh and his father. Trinh's first trial was attempted in mid-November 2023, but the initial jury panel had to be discharged and a new one brought in due to misconduct by certain members of the jury. Stanfill's second

forensic interview of Trinh was conducted roughly six weeks before that first attempt at trial and the report was not finalized until December 2023, just over two weeks before the case was assigned to a new judge for the retrial. Jury selection in the retrial began on January 23, 2024. One reasonable interpretation of the chronology of Stanfill's psychiatric evaluations of Trinh in relation to trial is that after completion of the assessment of Trinh and collateral interviews in May 2023, Stanfill was simply not willing to opine that as a result of his mental health condition, Trinh was unable to form "a premeditated intent to cause the death of another person" under the definition of murder in the first degree in RCW 9A.32.030 (a diminished capacity defense), or "to perceive the nature and quality of the act with which [he] [was] charged" or "to tell right from wrong with reference to the particular act charged" in order to satisfy the statutory requirement of an insanity defense under RCW 9A.12.010. If Stanfill was unwilling to so opine, a report that documented that conclusion would have been discoverable by the State and ripe for use at trial to undermine the defense theory of the case. It is entirely possible that defense counsel had inquired about the necessary expert opinion, but that Stanfill's conclusion after a full assessment supported only mitigation at sentencing. Trinh is correct that *Tilton* holds "[f]ailure of defense counsel to present a diminished capacity defense where the facts support such a defense has been held to satisfy both prongs of the *Strickland* test." 149 Wn.2d at 784. However, *Tilton* also explicitly holds that a "diminished capacity defense requires evidence of a mental condition, which prevents the defendant from forming the requisite intent necessary to commit the crime charged." *Id.* Trinh has not

established that such a defense was supported by this record, so *Tilton* does not require reversal here. Further, because the evidence available to trial counsel did not show that Trinh was prevented from forming the intent to commit the crime of murder in the first degree by premeditation, the tactical decision not to pursue such a defense at trial was not deficient performance and Trinh's IAC claim on this point fails.

### B. Insanity

Trinh also avers that trial counsel was separately ineffective for failing to pursue an insanity defense.[11] Insanity is a distinct defense from diminished capacity. *See Atsbeha*, 142 Wn.2d at 914. "A verdict of not guilty by reason of insanity completely absolves a defendant of any criminal responsibility." *State v. Crenshaw*, 98 Wn.2d 789, 793, 659 P.2d 488 (1983). "It is available only to 'those persons who have lost contact with reality so completely that they are beyond any of the influences of the criminal law.'" *Thompson*, 19 Wn. App. 2d at 732 (quoting *State v. White*, 60 Wn.2d 551, 590, 374 P.2d 942 (1962)). The defendant has the burden to establish that they satisfy the statutory requirements of an insanity defense "by a preponderance of the evidence." RCW 10.77.505(2). Toward that end, the defendant must show that

> [a]t the time of the commission of the offense, as result of mental disease or defect, the mind of the actor was affected to such an extent that:
> (a) [They were] unable to perceive the nature and quality of the act with which [they are] charged; or
> (b) [They were] unable to tell right from wrong with reference to the particular act charged.

---

[11] Wash. Ct. of Appeals oral arg., *supra*, 3 min., 25 sec.

RCW 9A.12.010(1).

Trinh's claim regarding the pursuit of an insanity defense suffers defects similar to those addressed in Section I.A., *supra*, regarding a diminished capacity defense theory. Again, as with a diminished capacity defense, Trinh would have assumed the burden to provide competent expert testimony to establish either his inability to perceive the nature and quality of the charged act (the premeditated shooting of Ashmore) or that he was unable to tell right from wrong regarding the charged act. Our Supreme Court has explained that "Chapter 10.77 RCW establishes the procedures for determining whether a criminal defendant was insane at the time of the commission of a charged crime." *State v. Carneh*, 153 Wn.2d 274, 282, 103 P.3d 743 (2004). As analyzed in Section I.A., *supra*, the Stanfill forensic evaluation does not opine that Trinh was *unable* to perceive the act or that he was unable to tell right from wrong but, rather, that Trinh may have had difficulty doing so. The State argues that even if Stanfill had testified to such an opinion, it would have contradicted the testimony of Trinh and others. For example, Trinh and Everist testified that when Everist pursued Trinh after the shooting, Trinh disarmed once he realized that Everist was not armed, and they returned to the scene together. Everist further testified that once they returned to the scene, Trinh advised his grandmother to put pressure on Ashmore's wounds. That fact alone is not dispositive, however, and Trinh is correct that case law is clear that an accused person is permitted to assert defense theories that may be inconsistent or otherwise contradict their own testimony. *See State v. Frost*, 160 Wn.2d 765, 775, 161 P.3d 361 (2007); *State v. Fisher*, 185 Wn.2d 836, 849, 374

P.3d 1185 (2016). Nonetheless, while this body of jurisprudence would have permitted presentation of an alternate theory defense, the facts of the case at bar would not; Trinh simply did not have the requisite expert opinion to satisfy RCW 9A.12.010 because Stanfill's opinion that "*there was evidence* that [Trinh] did not fully appreciate his actions" and "struggled to conform his behavior to the requirements of the law," fell short of concluding that he was unable to do so. (Emphasis added.)

In further support of his IAC claim on this basis, Trinh also attempts to leverage statements made by his trial counsel in the defense sentencing brief and at the sentencing hearing and specifically contends that these statements show defense counsel was mistaken about the law and counsel's decision to not pursue a mental health defense was based on that erroneous understanding. Trial counsel stated in the sentencing brief, "While Mr. Trinh clearly suffers from mental health problems, he was unwilling to present a mental health defense, adamant that a jury would agree with his delusional belief that he was clearly acting in self-defense." At the March 14, 2024 sentencing hearing, counsel then said,

> [Y]*ou can't present a mental health defense without the consent of the client*, and if your client is mentally ill and delusional in their belief that anyone would think and understand that all that had happened was simply a matter of self-defense, that the things they described and the conduct of their grandmother were all what was really happening at the household in the days leading up to the incident— this is a family affected by schizophrenia.

(Emphasis added.) The parties agreed at oral argument before this court[12] that these statements, taken at face value and in isolation, reflected a misapprehension

---

[12] Wash. Ct. of Appeals oral arg., *supra*, 8 min. 35 sec.; 10 min., 22 sec.

of the law. However, they must be considered in context. Review of counsel's full comments at sentencing establish that he sought an exceptional sentence below the standard range based on Trinh's mental health status, often referred to as a "failed diminished capacity defense" argument. After the comments Trinh has now highlighted on appeal, counsel explained, "The State talks about [Trinh] deceived the jury. He told the jury his truth. The jury decided it was not reasonable." After conviction and going into a contested sentencing, defense counsel necessarily needed to frame Trinh's mental health information differently in order to successfully argue for an exceptional sentence below the standard range on that basis. Considered in that context, the statements Trinh now relies on to support his claim that his trial counsel was ineffective can just as reasonably be understood as a strategic pivot for the best, most effective use of the expert opinion available to the defense and zealous argument on that point. The record as a whole makes clear that counsel was aware of and attentive to Trinh's mental health history from the initial competency evaluation, retention of a defense expert for a forensic psychological evaluation and, when it was clear that expert opinion did not support a diminished capacity or insanity defense, use of that information for mitigation in the event of sentencing.

Trinh's trial counsel had stated during argument on motions in limine the day before jury selection that Trinh was "not bringing a competency defense" because he had been "evaluated and found competent to stand trial." Counsel also affirmatively stated, likely for the reason identified above, that Trinh was "not raising an issue of diminished capacity." Chronologically, this was after Stanfill

had finalized his report in December 2023 and, despite the fact that it did not contain the requisite opinion to support a mental health defense, Trinh's attorney nonetheless actively sought admission of facts at trial regarding his client's mental health. Counsel argued,

> [T]o exclude any information related to, quote/unquote, mental health issues by and large, I think is an overstep. It takes away the ability for the jury to understand the entirety of the incident that led up to this and what was occurring on the morning of.

The State countered that if the trial court admitted that evidence, Trinh would be "essentially backdooring in a diminished capacity defense without an expert to contextualize the evidence." Again, counsel made a reasonable effort to leverage the evidence related to Trinh's mental health in a way that strengthened the theory of the defense without squarely presenting a true mental health defense under the relevant statutes and case law. This was a reasonable tactical decision and consistent with defense counsel's overall approach to the mental health evidence; making use of it when appropriate and consistent with statutory and case authority. Accordingly, even if Trinh's trial counsel was incorrect in his belief that he could not present a mental health defense at trial without his client's permission, his tactical decision here cannot be deficient performance because the defense expert's opinion was insufficient for that purpose. Accordingly, his IAC claim fails.

II.     Exclusion of Evidence of Firearm in Ashmore's Vehicle

Trinh contends that the trial court's exclusion of evidence that law enforcement found a pistol in Ashmore's vehicle following the altercation "was erroneous under the rules of evidence and violated [his] constitutional right to

present a defense." He specifically avers that this evidence was improperly excluded because it "corroborated Trinh's testimony" regarding his fear of Ashmore and was thus relevant to Trinh's self-defense claim. Trinh further claims that if we conclude trial counsel failed to preserve the issue by opting not to request the trial court to revisit its ruling on the matter after Trinh's testimony, such conduct would constitute ineffective assistance of counsel. In response, the State asserts that Trinh has failed to preserve any purported error regarding the exclusion of the evidence and counsel was not ineffective for declining to request that the court revisit its prior ruling in light of Trinh's testimony. It further contends that because the evidence was properly excluded as irrelevant, Trinh's right to present a defense was not violated. Trinh also avers that the prosecutor committed misconduct in closing argument by commenting on the absence of this evidence. The State counters that this single statement accurately reflected the evidence before the jury.

### A. Claimed Violation of Right To Present a Defense Not Preserved

"A criminal defendant's right to present a defense is guaranteed by both the federal and state constitutions." *State v. Jennings*, 199 Wn.2d 53, 63, 502 P.3d 1255 (2022); U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. Our Supreme Court has "interpreted these rights as coextensive." *State v. Luna*, 5 Wn.3d 465, 504, 578 P.3d 273 (2025). We conduct a two-step review to assess whether an evidentiary ruling has burdened the defendant's right to present a defense. *See Clark*, 187 Wn.2d at 648-49. We review the trial court's initial decision to admit or exclude evidence for an abuse of discretion. *State v. Orn*, 197 Wn.2d 343, 351,

482 P.3d 913 (2021). The trial court has abused its discretion if it "'applies the wrong legal standard[] or bases its ruling on an erroneous view of the law.'" *Id.* (alteration in original) (quoting *State v. Lord*, 161 Wn.2d 276, 284, 165 P.3d 1251 (2007)). If we determine that the trial court did not abuse its discretion, we then consider de novo if the defendant's Sixth Amendment rights have been infringed. *State v. Arndt*, 194 Wn.2d 784, 797, 453 P.3d 696 (2019).

"'The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations.'" *State v. Jones,* 168 Wn.2d 713, 720, 230 P.3d 576 (2010) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973)). The defendant does not have an absolute right to present *any* defense; "the State's interest in excluding evidence must be balanced against the defendant's need for the information sought to be admitted." *Arndt*, 194 Wn.2d at 812.

The parties here, both in the trial court and on appeal, dispute the import of *Jennings*. In *Jennings*, our Supreme Court distinguished between "evidence that merely bolsters credibility and evidence that is necessary to present a defense." 199 Wn.2d at 66-67. There, the State "was concerned that the jury would make prejudicial inferences, unsupported by the evidence" if the challenged evidence in that trial, a toxicology report that showed that the decedent in a murder case had methamphetamine in his system, was admitted. *Id.* at 66. Jennings argued that this evidence "was crucial because it corroborated his testimony regarding self-defense." *Id.* Our Supreme Court, in deciding that Jennings' right to present a defense had not been violated by the exclusion of the toxicology report, noted that

he "was still able to testify regarding his subjective fear and belief that [the deceased] was high on methamphetamine, which was his theory of the case." *Id.* at 67. The Supreme Court balanced Jennings' ability to pursue his theory of the defense against the State's interest in excluding the evidence due to "the prejudicial and speculative effect that the toxicology report might have had on the fact-finding process." *Id.*

Before we consider the merits of Trinh's claimed constitutional violation, we must determine whether his challenge has been preserved for appellate review. A party has a standing objection to the denial of a motion in limine "'[u]nless the trial court indicates that further objections at trial are required when making its ruling.'" *State v. Roosma*, 19 Wn. App. 2d 941, 948-49, 498 P.3d 59 (2021) (alteration in original) (internal quotation marks omitted) (quoting *State v. Powell*, 126 Wn.2d 244, 256, 893 P.2d 615 (1995)). "A standing objection does not arise, however, where the trial judge reserves ruling or 'makes only a tentative ruling subject to evidence developed at trial.'" *Id.* (internal quotation marks omitted) (quoting *Powell*, 126 Wn.2d at 256). If a ruling is tentative, "'any error in admitting or excluding evidence is waived unless the trial court is given an opportunity to reconsider its ruling.'" *State v. Dillion*, 12 Wn. App. 2d 133, 147, 456 P.3d 1199 (2020) (internal quotation marks omitted) (quoting *Powell*, 126 Wn.2d at 257).

At the hearing on motions in limine, the trial court stated that it would reserve ruling on the admissibility of the pistol found in Ashmore's truck and noted the following:

> [T]here's no way this is going to come in unless your client testifies.
> So I want to make it very clear, and I'm not saying that I will let it

come in, but I'm just saying that it's—that it's not going to come in—
I mean, at this point, I don't see that it's going to come in, but again
I'm going to review what you said, so I will consider that. I just want
to make it very clear, it's not coming in unless your client testifies.

This preliminary or conditional ruling placed the burden on Trinh to request the trial court revisit its decision if he testified. Trinh ultimately testified that Ashmore had threatened him in the past, he "knew Mr. Ashmore to carry firearms," and he did not feel safe following their initial altercation. He also stated that he thought he saw Ashmore place a firearm holster on the ground and then approach him with a firearm in his hand. After the conclusion of Trinh's testimony, his counsel requested that the jury be excused in order to address an issue with the court, but only stated,

> Previously we had indicated that after Mr. Trinh's testimony there was an issue of whether we would address whether we would recall or stipulate to other witness' testimony, and we just ask for a few minutes to confer as to whether we wish to do that or consider that we would rest at this point.

After a brief recess, Trinh's attorney indicated that the defense was prepared to rest. Despite the fact that he carried the burden to preserve any error associated with the tentative ruling, Trinh did not request that the court revisit its previous ruling that excluded the pistol found in Ashmore's vehicle. Thus, Trinh failed to preserve the issue for his appeal.

### B. Failure To Seek Revisitation of Prior Ruling To Exclude Not Ineffective Assistance

Next, Trinh contends that his trial counsel was ineffective for failing to request that the court revisit its ruling on the exclusion of the firearm in Ashmore's vehicle so as to preserve the issue, asserts that the record shows that counsel did

not have a "legitimate strategic reason" for doing so, and avers that he was prejudiced because "there is a reasonable probability the outcome of the trial would have been different had the pistol evidence been admitted." The State counters that Trinh's counsel was not ineffective and specifically contends that "[t]here was no evidence Trinh knew Ashmore had a gun in his truck and his testimony confirmed he believed Ashmore was armed when Ashmore walked toward him just prior to the shooting." The State notes that admission of the evidence would highlight the fact that Ashmore's pistol was in his truck and Trinh's assumption that he was armed was incorrect, which would not have furthered Trinh's trial strategy. The State also rejects Trinh's contention regarding prejudice from his counsel's decision not to revisit the tentative ruling.

Here, we apply the legal framework for reviewing an IAC claim set out in Part I, *supra*, and agree with the State on this specific allegation of IAC. Trinh had already testified that he knew Ashmore carried firearms, Ashmore had threatened him in the past, and Trinh feared for his safety on the day of the shooting. This testimony supported Trinh's self-defense theory. Critically, Trinh did not testify that he knew there was a firearm in Ashmore's truck so his credibility would not have been bolstered by admission of that evidence. After Trinh's testimony failed to establish knowledge that the firearm was in the truck, his counsel had to reassess if they would request to recall any witnesses or revisitation of the tentative ruling on admissibility, and the record establishes counsel did just that. Trinh's testimony did not provide anything to shift the trial court's analysis regarding admissibility. In fact, it did not address his awareness of this particular firearm at all; this alone was

- 24 -

a reasonable basis for defense counsel to conclude that the condition on which the tentative evidentiary ruling rested had not been met. A clear assessment of the evidence before the court establishes that a request for the judge to revisit the conditional ruling would have been, at best, futile. In fact, evidence of Ashmore's pistol in the truck would have actually *undercut* Trinh's theory of self-defense, and on that basis, it was a reasonable tactical decision to decline to pursue the issue further with the trial court. When we assess whether counsel's performance was deficient, we need consider only whether the tactical decisions of defense counsel were reasonable; they need not be the best decision or a winning strategy. *See Kyllo*, 166 Wn.2d at 863.

Accordingly, defense counsel made a reasonable strategic decision under the circumstances, and because Trinh has failed to show deficient performance, he cannot prevail on this IAC claim.

C.    Prosecutor's Comments About Whether Ashmore Was Armed Did Not Constitute Misconduct

Finally, as to the evidence of the firearm in Ashmore's vehicle, Trinh also avers that the prosecutor engaged in misconduct by "asking the jury to draw a favorable evidentiary inference" after the evidence was excluded and, he asserts, this was an inappropriate "response to Trinh's testimony or defense counsel's closing argument regarding the reasonableness of Trinh's fear." He also contends that he was prejudiced as a result of this purported misconduct because the "prosecutor's arguments made it substantially more likely jurors would reject Trinh's self-defense claim." The State counters that the "prosecutor's argument

was an accurate statement of the facts before the jury," particularly the revised statement the prosecutor made after Trinh's initial objection, and rejects Trinh's claim that there was a substantial likelihood that the comment affected the outcome of his trial.

"To prevail on a prosecutorial misconduct claim, a defendant who timely objects to the prosecutor's conduct at trial must prove that the 'conduct was both improper and prejudicial in the context of the entire trial.'" *State v. Loughbom*, 196 Wn.2d 64, 70, 470 P.3d 499 (2020) (quoting *State v. Walker*, 182 Wn.2d 463, 477, 341 P.3d 976 (2015)). We consider whether "'the prosecutor's improper comments are prejudicial only where there is a substantial likelihood the misconduct affected the jury's verdict.'" *State v. Bagby*, 200 Wn.2d 777, 788, 522 P.3d 982 (2023) (internal quotation marks omitted) (quoting *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011)). Generally, the State has "wide latitude in making arguments to the jury, and prosecutors are allowed to draw reasonable inferences from the evidence." *State v. Anderson*, 153 Wn. App. 417, 427-28, 220 P.3d 1273 (2009). The prosecutor must "'refrain from using statements which are not supported by the evidence and which tend to prejudice the defendant.'" *State v. Markovich*, 19 Wn. App. 2d 157, 170, 492 P.3d 206 (2021) (quoting *State v. Grover*, 55 Wn. App. 923, 936, 780 P.2d 901 (1989)).

Trinh timely objected to the challenged statement, so we next consider if it was both improper and prejudicial in the context of the entire trial. *See Loughbom*, 196 Wn.2d at 70. The comment to which Trinh assigned error occurred in the State's initial closing as follows:

[STATE]: What else did [Ashmore] not do besides not have a gun? He never threatened to shoot the defendant that day. He never threatened to kill the defendant that day. And he never had any kind of weapon. But what—

[TRINH]: Objection, Your Honor. There's an issue with that testimony, I'd ask that be stricken.

THE COURT: Why don't you rephrase your statement.

[STATE]: [Ashmore] never got a gun. Right? We know that. But what did [Ashmore] do? [Ashmore] treated the defendant like a little boy. He rolled up on his house, he drug him out, held him down, while he said, "Are you going to be nice now." And he kicked him out of his own house. Who would that not piss off?

Trinh restated his objection for the record after the State concluded its initial closing argument.[13]

At oral argument before this court, the State conceded that this statement by the prosecutor was improper but emphasized both that the judge handled Trinh's objection correctly by having the State rephrase and the rephrased presentation of the information regarding Ashmore was not objectionable.[14] We agree with the State on each of those points. The prosecutor's statement was not proper based on the State's awareness of the evidence regarding the firearm in Ashmore's vehicle at the time of the incident and the trial court's ruling on the admissibility of that evidence. However, the latter statement after the trial court directed the prosecutor to rephrase was an accurate statement of the evidence, both admitted and excluded.

---

[13] Specifically, defense counsel stated, "Your Honor, for the record, I simply want to confirm that our objection during the closing was prosecutorial misconduct given the claim that Mr. Ashmore had no gun, given the fact we knew he had one in the car, and defense was not allowed to reference it."

[14] Wash. Ct. of Appeals oral arg., *supra*, at 17 min., 25 sec.

In order to prevail on this challenge, Trinh must also establish that the comment was not only improper, as the State concedes, but also that it was prejudicial in the context of the trial as a whole; that is, that there existed a "'substantial likelihood the misconduct affected the jury's verdict.'" *See Bagby*, 200 Wn.2d at 788 (quoting *Monday*, 171 Wn.2d at 675). Here, the initial misstatement of the evidence was immediately corrected at the direction of the trial court. Trinh fails to demonstrate that this one comment affected the verdict, particularly in light of the testimony of the various witnesses about the events that unfolded prior to the shooting, Trinh's own testimony that he shot Ashmore, and the fact of the contemporaneous correction upon intervention by the judge. Accordingly, he has not established entitlement to relief on this basis.

III.    Cumulative Error

Next Trinh contends that an "accumulation of error produced an unfair trial here" such that reversal is warranted. He further asserts, as to his various IAC contentions, that "even if one deficiency standing alone does not warrant reversal, a defendant may be prejudiced as result of the cumulative impact of multiple deficiencies in defense counsel's performance."

"The cumulative error doctrine applies 'when there have been several trial errors that standing alone may not be sufficient to justify reversal but when combined may deny a defendant a fair trial.'" *In re Pers. Restraint of Morris*, 176 Wn.2d 157, 172, 288 P.3d 1140 (2012) (quoting *State v. Greiff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000)). We consider the totality of the circumstances, which much show "that the accumulation of errors substantially prejudiced the defendant

and denied [them] a fair trial" for the defendant to be entitled to reversal. *State v. Azevedo*, 31 Wn. App. 2d 70, 85, 547 P.3d 287 (2024). However, if the evidence against a defendant is overwhelming, even cumulative error does not mandate reversal. *State v. Meza*, 26 Wn. App. 2d 604, 624, 529 P.3d 398 (2023).

Even if we were to accept Trinh's contention on this issue and assume, without deciding, that the errors he identifies had occurred, there was overwhelming evidence against Trinh such that reversal based on cumulative error would not be warranted. Trinh admitted to shooting Ashmore and claimed that he had done so in self-defense due to his fear that Ashmore was armed and presented a threat to him. The main issue for the jury to consider was whether Trinh acted in self-defense, but his own testimony failed to establish beyond a reasonable doubt that Ashmore was in possession of a pistol or otherwise constituted a threat at the time Trinh shot him. Thus, even if the errors Trinh presents on appeal had occurred, he faced such overwhelming evidence of guilt that reversal would not be warranted on this basis.

IV.    Statement of Additional Grounds for Review

Trinh's statement of additional grounds for review presents a number of additional challenges to his conviction. However, two of them are reiterations of the IAC claims presented in his briefing, analyzed in Part I and Section II.B *supra*, and need not be revisited. The remaining grounds he presents either lack sufficient legal authority to establish entitlement to relief or are without merit. We analyze each challenge not already addressed, *supra*, in turn.

A.    Admission of Surveillance Video Footage

Trinh contends the admission of video evidence and maps of the area violated his constitutional rights because they lacked the requisite foundation for admissibility, specifically because they were "gathered and made by non experts". However, because his argument on this issue misunderstands the threshold for the authentication of video and photographic evidence, he fails to engage with relevant law.  SCSO Detectives James Headrick and Dave Bilyeu both testified regarding surveillance footage recorded by a neighbor; Headrick described the processes he had performed on the video to enhance the depiction of recorded events, and Bilyeu testified to the photos he took of the scene, which included aerial shots from a drone.

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  ER 901(a).  A video recording or photo may be authenticated by laying the necessary foundation through a witness who is "'able to give some identification as to when, where, and under what circumstances'" it was created and who testifies that it "'accurately portrays the subject illustrated.'" *State v. Sapp*, 182 Wn. App. 910, 914, 332 P.3d 1058 (2014) (quoting *State v. Newman*, 4 Wn. App. 588, 593, 484 P.2d 473 (1971)).  Because Trinh does not engage with the relevant authority, we decline to reach the merits.

B. Purported Failure To Propose Jury Instruction for Lesser Included Offense

Trinh contends that his attorney was ineffective because trial counsel allegedly failed to propose a jury instruction for the lesser included offenses of murder in second degree or manslaughter in the second degree. However, the record plainly establishes that his trial counsel *did* in fact propose a jury instruction for murder in the second degree as a lesser included offense of the charged crime. Further, the instruction proposed by defense counsel was accepted by the court and provided to the jury as instruction no. 13, and the elements of murder in the second degree were also provided in instruction no. 14. Thus, Trinh's claimed error is directly contradicted by the record and he is not entitled to relief on this basis.

C. Sufficiency of the Evidence

Finally, Trinh avers that his conviction must be reversed due to insufficient evidence. Trinh provides the correct test for such a challenge, but his analysis is merely a reiteration of errors presented in his briefing and fails to engage with the test for sufficiency of the evidence. For example, he presents various contentions regarding the State's reference to Ashmore's pistol in closing argument and the ineffectiveness of his trial counsel; both issues addressed in detail, *supra*.

When we consider a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and determine if "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State. v. Johnson*, 188 Wn.2d 742, 762, 399 P.3d 507 (2017)

(emphasis and internal quotation marks omitted) (quoting *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (plurality opinion)).  In reviewing a claim of insufficient evidence, "'all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant.'"  *State v. Dreewes*, 192 Wn.2d 812, 821-22, 432 P.3d 795 (2019) (internal quotation marks omitted) (quoting *Johnson*, 188 Wn.2d at 762).  Further, our analysis assumes the truth of the State's evidence.  *State v. Ozuna*, 184 Wn.2d 238, 248, 359 P.3d 739 (2015).

The jury was instructed on the essential elements of murder in the first degree.  The "to convict" instruction, no. 6, read as follows:

> To convict the defendant of the crime of Murder in the First Degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about the 6th day of August, 2022, the defendant acted with intent to cause the death of Roy Ashmore;
> (2) That the intent to cause the death was premeditated;
> (3) That Roy Ashmore died as a result of the defendant's acts; and
> (4) That any of these acts occurred in the State of Washington.

In addition to the other witnesses called by the State, Trinh's own testimony provided the jury with sufficient evidence to support a finding of guilt.  He testified that on August 6th, he fired at least five rounds at Ashmore, including once at his head after Ashmore had already been shot and had fallen to the ground, which supports a reasonable inference that Trinh acted with an intent to cause death.  Trinh explicitly stated that he went to retrieve his firearm after the initial altercation, which supports a reasonable inference of premeditation.  An emergency medical technician who had responded to the 911 call testified that Ashmore died at the

scene.   Accordingly, a "'rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt'" as required by *Green*, 94 Wn.2d at 221 (quoting *Jackson*, 443 U.S. at 319) (emphasis omitted), and Trinh's conviction for murder in the first degree was supported by sufficient evidence.

Affirmed.

WE CONCUR:

Feldman, J.          Díaz, J.